Alice BOCK, Surviving Spouse of
Charles W. Bock, Deceased,
Appellant,

v.

BROADWAY FORD TRUCK SALES,
INC., Respondent–Cross
Appellant,

and

Reliance Insurance Co., Respondent–
Cross Appellant.

No. ED 78509.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 11, 2001.

Robert J. Lenze, Robert J. Lenze, P.C., St. Louis, for Appellant.

David S. Ware, Mary Ann Lindsey, Evans & Dixon, St. Louis, for Respondent.

SIMON, Judge.

Alice Bock, surviving spouse of Charles W. Bock, deceased, (Bock) appeals from an award of the Labor and Industrial Relations Commission (Commission), denying her deceased husband's claim for past medical expenses, future medical care, temporary total disability benefits and assessing permanent partial disability in his claim against his former employer, Broadway Ford Truck Sales, Inc. (employer) and its insurer, Reliance Insurance Company (insurer). (collectively respondents).

On appeal, Bock contends the Commission erred by: (1) assessing permanent partial disability (PPD) in that there was no evidence of the extent and nature of Bock's PPD and the issue of PPD was not stipulated for hearing; (2) denying reimbursement of medical expenses not furnished by employer and failing to consider that if employer neglects or denies medical care, Bock is free to seek medical care on his own and failing to hold employer responsible for any negligence or malpractice of a treating physician where employer fails to fulfill its statutory obligation to provide the necessary medical care; (3) failing to award future medical care because Drs. Thomas Musich and Michael Ralph were of the opinion that additional medical care was required; (4) denying benefits for temporary total disability (TTD) because Bock testified he was unable to perform any work from May 5, 1998 to date of hearing and Dr. Musich rendered his medical opinion supporting same and Commission found that Bock suffered PPD of 17.5%; (5) denying an award for past medical expenses which was against the overwhelming weight of evidence in utilizing an incorrect burden of proof for liability in finding that neither the fall nor the occupational disease is independently responsible for the medical condition in that the law requires that only one of them be a substantial factor necessitating treatment; (6) ignoring the uncontradicted medical opinion that if diabetes is the explanation for Bock's pain and neuropathy, it is self-limiting and should have disappeared within 12 months of the injury or surgery, but Bock had the same complaints some 16 months after surgery; (7) finding Dr. Ralph's opinion that Bock sustained no disability as not credible, but failed to disregard his opinion in its entirety, and because there are frequent contradictions throughout his testimony; and (8) denying Bock's request to submit addition-

al evidence because the additional medical evidence removed any question about the cause of his lower back, right leg pain and weakness based on the surgery performed four months after the hearing in that the surgeon found pieces of herniated disc material compressing Bock's lower back nerves. We affirm in part and reverse and remand in part.

■ We may modify, reverse, remand for rehearing or set aside an award or decision of Commission only if the Commission's actions were unauthorized by law, in excess of its authority, fraudulent, unsupported by the facts as found by the Commission or unsupported by competent evidence on the whole record. *Mann v. Varney Const.*, 23 S.W.3d 231, 232 (Mo. App. E.D.2000).

The record indicates that Bock worked as a heavy truck mechanic for employer beginning August 16, 1996. His duties included removal, repair, replacement and reinstallation of various parts on large trucks, with repair work on trucks' brakes, clutches, transmissions and springs. Many of the parts were extremely heavy, weighing between 200 to 800 pounds, and the trucks were not raised on lifts when Bock worked on them. He was required to position himself under these trucks, frequently working in difficult and twisted positions in order to reach, remove and reinstall the necessary parts after repair.

On April 23, 1998, Bock slipped on antifreeze while walking across employer's garage repair area. He fell onto his hands and knees and immediately rolled over onto his rear-end. He got up within a few seconds and felt a pulling sensation in his lower back, but completed his shift. He worked the next several days, but noticed increased pain in his lower back and into his right leg. He found it difficult to get in and out of the trucks. On May 5, 1998, Bock was unable to continue working.

Gilbert Hofstetter (Hofstetter) was working with Bock when the incident occurred and was walking behind Bock when he fell, but did not actually see the fall. He recalled seeing Bock sitting down attempting to get up and that over the next several days, he noticed Bock having a problem climbing in and out of the trucks.

The injury report was filed on June 9, 1998, and described the incident as follows: Bock was walking through the shop, slipped on antifreeze, fell on both knees and injured his lower back.

On June 15, 1998, Bock filed a claim for workers' compensation against employer for the injuries sustained on April 23, 1998. He also sought to recover against the Second Injury Fund, alleging prior back injuries in 1967 and 1972. Respondents filed an answer asserting that they were without sufficient facts or information upon which to base any conclusions relating to the claim for compensation and denied each allegation. The Attorney General of Missouri (AG) filed his answer alleging that he was without knowledge or information sufficient to form a belief as to the truth of the statements in the claim and that none of statements in the claim could be admitted, but the case would be reevaluated when further information is received.

Later, Bock filed an Amended Claim for Compensation alleging, that in the scope of his employment, he slipped and fell in oil or antifreeze on April 23, 1998, injuring his low back. Further, he suffered increasing pain over the next several weeks after the fall and was suffering pain in his back for several weeks prior to the accident as a direct and proximate result of his work activities performed within the scope and course of employment and at specific direction of the employer. He also alleged he began to suffer increased back pain as a

result of various job duties he performed as a truck mechanic, all of which led to a physical breakdown or change in pathology of his low back condition and that this increase in pain continued after the fall of April 23, 1998, and eventually resulted in his ceasing work for employer.

On December 10, 1998, respondents filed their answer to the amended claim asserting that they were without sufficient facts or information upon which to base any conclusions pertaining to the amended claim for compensation and therefore denied each allegation contained in the claim not specially admitted.

Following Bock's request for a Hardship Setting, a hearing was held to determine a temporary award. At the start of the proceeding, the Administrative Law Judge (ALJ) stated:

It is my understanding that the issues for resolution at this time are: one, accident; two, occupational disease; three, medical causation; four, liability of past medical expenses in the amount of $56,462.77; five, future medial care; six, rate; and seven, nature and extent of temporary total disability benefits.

[Bock's attorney], do you concur with what I've dictated for the record?

[Bock's attorney]: I do, Your Honor.

[ALJ]: [Respondents' attorney], do you concur with what I've dictated for the record?

[Respondents' attorney]: Yes, Your Honor.

Bock, his wife and Hofstetter were the only individuals to testify at the hearing. On Bock's behalf, Exhibit's A through CCC were admitted including the deposition and records of Dr. Musich, records of Drs. Bemis, Green, Reid, Galbreath, Mendelsohn, Taylor, Laws, Schreiber, Vest, Lenke, Gold, Sherill, Platt, Rapaport, Tolod, Reed, Shuter, Selhorst, bills from vari-

ous hospitals, medical centers, physical therapy center. On respondents' behalf, Dr. Ralph's deposition along with his office notes concerning the examination of Bock and statement of Gilbert Hofstetter were admitted.

At the hearing, Bock testified that prior to his injury, he frequently worked overtime and performed side jobs and mechanic work on cars belonging to friends, neighbors and family once or twice a week. Prior to working for employer, Bock worked as a mechanic for various employers, including at one time acting as a supervisor in charge of maintenance for a fleet of vehicles. He further testified that prior to May 5, 1998, he never missed any work at any of his prior places of employment or while working for employer due to leg and back pain or any similar problems.

Furthermore, Bock testified he suffered from back pain since the mid 1970s and sought treatment from a chiropractor, Dr. Bemis, for the stiffness and back problems resulting from an accident in which Bock was rear-ended by a tractor trailer in 1972 and another motor vehicle accident in 1979. According to Dr. Bemis' medical records, Bock received treatment for his neck, both upper extremities, his back and both legs.

Bock testified that he saw Dr. Christopher Green, his family doctor, on November 3, 1988, and that Dr. Green treated him for diabetes, high blood pressure, fatigue and depression and made a diagnosis of diabetes and prescribed oral diabetic medications and diet.

Bock testified that at the time of the hearing he had a tingling sensation in his right leg that went all the way throughout the leg down into the foot. He further testified he was unable to perform any of the work activities he performed prior to his fall. He had difficulty standing, walking and would sometimes fall when at-

tempting to walk. His pain decreased when he was in a recliner or lying in bed. He testified that he spent most of his day in a recliner. Bock further testified he drove with a lumbar support, but experienced a problem operating the brake and accelerator because of weakness in his right leg. He also testified that he was unable to perform maintenance on his own vehicle.

Alice Bock testified as to the significant problems Bock had going up and down steps, his significantly lower level of physical activity around the house since his injury and that she had personally observed him fall on several occasions.

Dr. Green referred Bock to Dr. Reid and he saw Dr. Reid on April 6, 1998. Dr. Reid noted there were no restrictions in bending and that Bock's gait was completely normal. On April 22, 1998, Dr. Reid ordered an MRI which, he stated, "revealed severe degeneration of the disc at the presumed level of L1–L2 with vertebral end plat irregularities and edema, the former probably due to notochordal remnants, a normal variant, with associated minor disc bulging but no definitive disc herniation; and degenerative changes and bulging at multiple other levels, especially L4–L5, probably clinically insignificant and associated with mild multilevel facet osteoarthritis." A biopsy was taken on April 27, 1998, and failed to reveal any positive findings.

On April 30, 1998, Dr. Reid examined Bock again and found a slight difference from his condition on April 6, 1998. Bock failed to mention the fall of April 23, 1998, but did complain of pain from the needle biopsy. Dr. Reid found increased pain, with pain radiating into his right leg. Dr. Reid ordered a series of lumbar epidural steroid injections and Bock received 2 of the 3 injections, but they gave him no relief. Dr. Reid referred Bock to Dr. Tay-

lor on June 16, 1998, and he discussed the possibility of surgery with Bock at the L4–L5 level and referred him to Dr. Vest, an orthopedic surgeon.

Dr. Vest saw Bock on June 23, 1998 and after examining Bock and reviewing his test results, diagnosed him as having lumbar pain with right sciatica; a right forminal disc herniation at L3–L4; and degenerative disc disease of the lumbar spine. Dr. Vest ordered a second MRI after which he made a diagnosis of a herniated disc at L3–L4. On July 16, 1998, Dr. Vest performed surgery, a lumbar microdiscectomy at the L3–L4 level, on the right side. Bock testified he felt relief for approximately two to three weeks, with a significant decrease in pain, both in his right leg and his low back and that his condition continued to degenerate over the next several months, with increasing right leg numbness and weakness.

On January 20, 1999, Bock saw Dr. Gold, a neurosurgeon, and he suggested that Bock consider surgery at the L4 level and referred him to Dr. Sherrill, a neurosurgeon, who referred Bock to his colleague, Dr. Selhorst, a neurologist. Both Drs. Sherrill and Selhorst warned Bock against surgery and they diagnosed diabetic peripheral nerve disease or diabetic amyiotrophy.

Dr. Musich, who is board certified in family practice, examined Bock on May 11, 1999, and found that Bock's injury on April 23, 1998, resulted in a herniated disc at the L3–4 level. Dr. Musich testified that Bock remained temporarily totally disabled since the first part of May when he stopped working for employer. He also testified that the evaluations and the care and the treatment that Bock received between April 30, 1998, and the present time were all reasonable, necessary and secondary to the work injury of April 23, 1998.

Dr. Musich also agreed with an assessment made by Dr. John Selhorst, a neurologist, that diabetic amyiotrophy, which he also described as "asymmetric monnneuritis affecting the femoral nerve," is a self-limiting condition, meaning that it typically reverts back to its near normal original condition within three to twelve months after the symptoms begin. Dr. Musich further testified that the longer Bock's lower back pain and right leg pain remained significant, the less likely it was related to his diabetic condition or diabetic complications, and the more likely it was related to his disc problems.

At the request of employer, Dr. Ralph, an orthopedic surgeon, examined Bock on April 23, 1999. In his opinion, Dr. Ralph concluded that: 1) Bock's original problem was related to diabetic neuropathy, which is not related to his work activity; 2) he was an untreated, severely depressed individual; 3) he poorly controlled his diabetes and refused to take his insulin; 4) paralysis of the right quadriceps muscle was secondary to back surgery; 5) he was not in need of additional treatment that could be attributed to his work with employer; 6) he did not sustain any type of acute injury to his low back or lumbosacral spine on or about April 23, 1998; 7) his work was not in any way a substantial factor in his degenerative disc disease; and 8) his work or the accident of April 23, 1998 was not a substantial factor in any way with regards to his ongoing complaints. Further, he opinioned, "I'd probably give him a five or ten percent on the back and probably, without even looking at the book, I would probably give him thirty percent of the right lower extremity due to his quads out, and I would probably reduce that a third to forty percent after he had surgery."

ALJ entered an award on November 3, 1999, finding that:

1) Mr. Bock sustained a compensable injury on the alleged date of accident; 2) Mr. Bock did sustain an accident by way of occupational disease caused by the heavy labor he performed; 3) neither the fall nor the occupational disease were the direct medical causes of Bock's surgery or the herniated disc at L2–L3; 4) however, both the fall and the occupational disease, either together or independent of each other were substantial factors that aggravated Bock's degenerated back condition; 5) neither the fall nor the occupational disease were substantial factors leading to Mr. Bock's need for medical treatment, the Court makes no finding in favor of Bock on this issue; 6) back surgery was not work related, any need for additional treatment that may stem from that surgery would not be the responsibility of the Employer/Insurer. No award for future medical care is made; 7) either the fall nor the occupational disease claim was responsible for Bock's need for surgery, no award for temporary total disability is made; 8) as to the claim for the date of accident April 23, 1998, no disability is found attributable to the fall; 9) as to the occupational disease claim, Bock is awarded a 17.5% disability; 10) it is obvious to the Court that the Employee has a much greater overall disability; 11) Mr. Bock suffers from a serious and debilitating diabetic condition which pre-existed the onset of his occupational disease and the fall; 12) however, any additional disability or claim for permanent total disability should be pursued against the Second Injury Fund; and 13) the award for a 17.5% disability is based upon the aggravation and exacerbation of a pre-existing degenerative back caused by the heavy physical labor Employee performed for Employer.

On November 19, 1999, Bock filed his Application for Review with the Commission. On November 23, 1999, respondents filed their Application for Review. Bock filed a Motion to Submit Additional Evidence to the Commission on December 23, 1999, alleging that on December 8, 1999, Dr. Arden Reynolds performed surgery on his low back removing a disc fragment impinging on the L3–4 nerve space, which is related to Bock's symptoms and eliminates any speculation about the effect of diabetes. Attached to the motion was a consultation, history and physical examination, MRI and radiology reports and an operative report from Blessing Hospital. Further, Bock argues that he could not, with reasonable diligence, have discovered the medical evidence which he wished to additionally submit because he had received numerous conflicting opinions about the source of his problem. Respondents filed an answer requesting that Bock's motion be denied pursuant to 8 CSR 20–3.030(2)(A)(4) which provides, in pertinent part:

(A) The hearing of additional evidence by the commission shall not be granted except upon the ground of newly discovered evidence which with reasonable diligence could not have been produced at the hearing before the ALJ. The motion to submit additional evidence shall set out specifically and in detail–

* * *

4. Full and accurate statement of the reason the testimony or exhibits reasonably could not have been discovered or produced at the hearing before the ALJ;

5. Newly discovered medical evidence shall be supported by a medical report signed by the doctor and attached to the petition. Shall contain a synopsis of the doctor's opinion, basis for the opinion and the reason for not submitting same at the hearing before the ALJ; and

6. Tender of merely cumulative evidence or additional medical examination does not constitute a valid ground for the admission of additional evidence by the commission.

Respondents argue that Bock did not support medical evidence with a medical report signed by Dr. Reynolds and attached to the petition; nor a synopsis of the doctor's opinion, a basis for the opinion, or the reason for not submitting the same at the hearing. Respondents further argue that the additional evidence is cumulative to the evidence in Dr. Musich's May 11, 1999 report, thereby making the records of Dr. Reynolds cumulative. Commission denied Bock's motion concluding that it failed to meet the standards set forth in 8 CSR 20–3.030(2)(A).

On August 24, 2000, Commission adopted ALJ's award as modified by its supplemental opinion. Commission modified "Accident/Occupational Disease/Medical Causation" finding as follows:

To make things more complicated, there is the opinion of Dr. Ralph that [Bock] did not need surgery and that many of his problems are directly related to his diabetes. We do not find credible, however, Dr. Ralph's testimony that [Bock] has no injury or disability to his back attributable to employment with employer.

Commission further modified the ALJ's finding on the issue of medical causation:

Dr. Musich's testimony convinces us that there is a direct causal connection between the conditions under which [Bock] performed his work for employer and the degenerative disc disease in [Bock's] lumbosacral spine. [Bock's] performance of repetitive heavy labor for em-

ployer was a substantial factor in the cause of the degenerative disc disease in [Bock's] low back.

Commission struck ALJ's finding as to "Liability of Past Medical Expenses" and found that:

Some of the medical bills submitted by [Bock] predate May 7, 1998. The remainder of the bills were incurred to diagnose, cure or relieve Bock from the effects of his diabetic neuropathy, which was unrelated to his work for employer. The evidence demonstrates that the past medical treatment for which [Bock] seeks reimbursement, including surgery, was not reasonably required to cure and relieve [Bock] from the effects of the April 23, 1998 fall or [Bock's] occupational disease. Employer is not liable for [Bock's] past medical expenses.

In its finding, Commission cited Section 287.140.1 RSMo 1999 (all further references herein shall be to RSMo 1999 unless otherwise indicated), which provides, in pertinent part:

\* \* \*

1. In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury. If the employee desires, he shall have the right to select his own physician, surgeon, or other such requirement at his own expense.

Commission modified ALJ's finding on future medical care as follows:

Based on the evidence presented, we are persuaded that claimant does not need future medical care to cure and relieve him from the effects of the

April 23, 1998 fall or from the effects of his occupational disease. Employer is not liable for future medical care.

Commission agreed with ALJ's award of 17.5% of the body as a whole referable to Bock's low back as a result of the occupational disease.

On September 22, 2000, Bock filed his Notice of Appeal with Commission and on September 26, 2000, respondents filed their notice of appeal with Commission.

Subsequently, we directed respondents to show cause why their appeal should not be dismissed pursuant to Section 287.495 because the notice of appeal was filed more than thirty days after the award entered on August 24, 2000. Responding, they allege that the Notice of Appeal was timely pursuant to Rule 81.04(b), in that it was filed within ten days of the date on which Bock filed his Notice of Appeal with Commission.

Section 287.495, provides in pertinent part:

The final award of the commission shall be conclusive and binding unless either party .... shall, within thirty days from the date of the final award, appeal the award to the appellate court having jurisdiction in the area in which the accident occurred. .... Such appeal may be taken by filing notice of appeal with the commission....

Rule 81.04(b) provides:

If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within ten days of the date the first notice of appeal was filed.

We asked respondents to brief this issue in the jurisdictional portion of their brief. Further, we granted their motion to consolidate the appeals.

In *Porter v. Emerson Electric Co.,* 895 S.W.2d 155, 157 (Mo.App. S.D.1995), the court held that the right to appeal is statutory, and without underlying statutory authority, there is no right to appeal. Section 287.495, not Rule 81.04, authorizes appeals from the Commission to an appellate court. *Id.* at 160. Consequently, the deadline of thirty days in Section 287.495.1 is not extended by Rule 81.04(b). *Id.* Respondents' appeal, in accordance with Section 287.495.1, was not timely filed on September 26, 2000 and therefore is dismissed.

Unfortunately, Charles Bock passed away on September 27, 2000, and we granted leave to Alice Bock, his surviving spouse, to substitute for her husband in the prosecution of his appeal.

In his first point on appeal, Bock contends Commission erred by assessing PPD because the finding is not supported by substantial evidence in that there was no evidence of the extent and nature of PPD caused by Bock's work injury or occupational disease. Bock argues that the parties did not stipulate that the percentage of PPD was an issue for trial and he presented no evidence as to his percentage of PPD.

Respondents argue that undisputed evidence was presented regarding PPD in that Dr. Ralph rendered a five to ten percent disability on Bock's back and a thirty percent disability of his right lower extremity.

The rules of the Department of Labor and Industrial Relations, in particular, 8 CSR 50–2.010(14), provide: "hearings before the division shall be simple, informal proceedings. The rules of evidence for civil cases in the state of Missouri shall apply. Prior to hearing, the parties shall stipulate uncontested facts and present evidence only on contested issues." Stipulations are controlling and conclusive, and the courts are bound to enforce them. *Spacewalker, Inc. v. American Family,* 954 S.W.2d 420, 424 (Mo.App. E.D.1997). A stipulation should be interpreted in view of the result, which the parties were attempting to accomplish. *Id.*

Bock's petition to the Division of Workers' Compensation was for a Hardship Hearing, not a final disposition. During Dr. Ralph's deposition, the Second Injury Fund's attorney objected to the PPD rating because it was not in Dr. Ralph's report. There were no other objections to that testimony. Bock did not present any evidence as to his PPD. Therefore, Commission's award of PPD went beyond the issues stipulated for trial and was in excess of its power. *Boyer v. National Express Co., Inc.,* 49 S.W.3d 700, 701–02, 705 (Mo. App.E.D.2001). The PPD award is reversed and the cause remanded to provide Bock an opportunity to present evidence as to his disability.

In his second point, Bock contends Commission erred by denying reimbursement of medical expenses not furnished by employer because the finding is not supported by substantial evidence and failing to hold employer responsible for any negligence or malpractice of a treating physician. Bock argues employer should be liable for all medical treatment provided to him by all health care providers from April 6, 1998, when he was referred to Dr. Reid for back pain caused by his daily repetitive work activities.

Respondents argue that they have no obligation under Section 287.140 to reimburse Bock for his past medical expenses because such expenses were not for treatment necessary to cure and relieve Bock's alleged work related injury. Further, they should not be liable for any negligence or malpractice committed by Dr.

Vest because Bock selected Dr. Vest and any malpractice committed by Dr. Vest was not a consequence of Bock's April 23, 1998 slip and fall or his occupational disease.

Section 287.140.1 provides in pertinent part, "In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment ....as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury."

Bock complained of back pain for many years and was treated by Dr. Bemis from February 17, 1978, to August 4, 1997, with specific complaints to his back and radiating pain in his right leg also in November of 1988, Dr. Green diagnosed Bock with diabetes and subsequently in 1989, degenerative disc disease.

Dr. Ralph opined that Bock's original problem was related to diabetic neuropathy and was unrelated to his work activity and he should not have undergone the surgical procedure performed by Dr. Vest because it was not medically necessary or reasonable. Thus, Commission's denial of past medical expenses is supported by substantial evidence. Point denied.

■ In his third point, Bock contends Commission erred by failing to award future medical care because Drs. Musich and Ralph believed that additional medical care was required for Bock.

Respondents argue that any additional medical care that Bock might require did not arise out of his April 23, 1998 fall or his alleged occupational disease and was not necessary to cure and/or relieve any work related injury sustained by Bock.

■ Where future medical benefits are awarded, the medical care must flow from the accident before the employer is to be held responsible. *Landers v. Chrysler*

*Corp.*, 963 S.W.2d 275, 283 (Mo.App. E.D. 1997). It is sufficient to award future medical benefits if the claimant shows by reasonable probability that he is in need of additional medical treatment by reason of his work-related accident. *Id.*

At the hearing, Bock testified that Dr. Joseph Sherrill in January of 1999 examined him and told him that his problems were related to diabetes, not to his back, that he had a diabetic peripheral neuropathy and that he did not need any further surgery. Bock further testified that he saw Dr. John Selhorst in January of 1999 and he found that Bock had diabetic amyotrophy and that his pain should be managed with medications and that he should use a wheelchair or walker. Bock testified that Dr. Mendelsohn, who examined Bock in March of 1999, could not identify any problem in the his spine, which was responsible for weakness in his right leg, that he did not have a surgical problem, and that surgery would not help his condition. Dr. Ralph discussed the possibility of performing a surgical procedure on Bock's leg to improve the weakness he suffered, but Dr. Ralph attributed the need for that procedure to the original back surgery. The Commission's denial of future medical care is not erroneous.

■ In his fourth point on appeal, Bock contends Commission erred by denying benefits for TTD because he was unable to perform any work from May 5, 1998 to the date of hearing and Dr. Musich indicated that Bock was temporarily totally disabled since the first part of May when he stopped working.

In its award, Commission found that neither the fall nor the occupational disease claim was responsible for Bock's need for surgery and made no award for TTD and found no disability attributable to the fall. In its finding, Commission directed

its attention to Bock's need for surgery and disability attributable to the fall. However, it did not address the temporary disability, if any, attributable to the occupational disease for the period beginning May 5, 1998, when Bock was unable to continue working, to July 16, 1998, the date of surgery. Since, no finding as to TTD was made for that time frame as related to the occupational disease, it is necessary to reverse that portion of the award and remand to Commission for further findings.

In his fifth point, Bock contends Commission's award is against the overwhelming weight of evidence because it utilizes an incorrect burden of proof for liability for past medical expenses in finding that neither the fall nor the occupational disease are the independent factors necessitating Bock's medical treatment. Bock further argues that he should only be required to demonstrate that either the accident of April 23, 1998, or the occupational work activities (or a combination of the two) was a substantial factor in his current medical condition.

Commission struck ALJ's finding as to "Liability of Past Medical" and relying on Section 287. 140.1 found:

> Some of the medical bills submitted by Bock predate May 7, 1998. The remainders of the bills were incurred to diagnose, cure or relieve Bock from the effects of his diabetic neuropathy, which was unrelated to his work for employer. The evidence demonstrates that the past medical treatment for which Bock seeks reimbursement, including surgery, was not reasonably required to cure and relieve Bock from the effects of the April 23, 1998 fall or Bock's occupational disease. Employer is not liable for Bock's past medical expenses.

The Commission did not use an incorrect burden of proof for liability of past medical, but merely concluded that the medical expenses were not incurred for the treatment of a work-related injury or disease. This finding is supported by substantial evidence.

In his sixth point on appeal, Bock contends Commission erred in ignoring Dr. Musich's medical opinion that if diabetes was the explanation for his pain and neuropathy, it was self-limiting and should have disappeared within twelve months of the injury or surgery, but at the time of trial, he had the same complaints sixteen months after surgery.

Respondents argue that medical causation of an injury and the necessity of medical treatment are findings of fact and that Commission is the ultimate judge of witness credibility in workers' compensation matters.

In workers' compensation cases, the Commission is the ultimate trier of fact. *Sanderson v. Porta–Fab Corp.*, 989 S.W.2d 599, 601 (Mo.App. E.D.1999). Questions regarding medical causation of an injury are issues of fact for the Commission, as are questions regarding medical treatment. *Id.* The Commission is the sole judge of the weight of the evidence and credibility of the witnesses. *Id.* It is in the Commission's sole discretion to determine the weight to be given expert opinions and that cannot be reviewed by this court. *Conley v. Treasurer of Missouri,* 999 S.W.2d 269, 271 (Mo.App. E.D.1999).

Commission found that the medical treatment received by Bock and the corresponding medical bills incurred by Bock after May 7, 1998, were incurred to diagnose, cure, treat, or relieve him from the effects of diabetic neuropathy, which is not related to his work for employer. Since this is a fact question, Commission did not err.

In his seventh point, Bock contends Commission erred in finding Dr. Ralph's opinion that Bock sustained no disability not to be credible, but failing to disregard the doctor's testimony in its entirety because there were frequent contradictions in his testimony.

The Commission is free to disbelieve all or part of the testimony of a witness, even if no contradictory or impeaching evidence is introduced. *Conley v. Treasurer of Missouri*, 999 S.W.2d at 271. Where the right to compensation depends upon which of two conflicting medical theories should be accepted, the issue is one particularly for the Commission's determination. *Landers v. Chrysler Corp.*, 963 S.W.2d at 282.

Commission concurred with Dr. Ralph's finding that Bock did not need surgery and that his problems are directly related to his diabetes, but did not agree with Dr. Ralph's testimony that Bock has no injury or disability attributable to his work. Commission is free to disbelieve that part of Dr. Ralph's testimony. *Conley*, 999 S.W.2d at 271. Point denied.

In his eighth point, Bock contends Commission erred in denying his request to submit additional evidence because he complied with all requirements for such a request, the additional medical evidence removed any question about the cause of Bock's lower back, right leg pain and weakness based on the surgery performed four months after the hearing in that the surgeon found pieces of herniated disc material compressing Bock's lower back nerve.

Further, Bock argues that the note of Dr. Arden Reynolds clearly explains the nature and substance of the newly discovered evidence, it also completely removes any question about whether Bock's back and leg pain and numbness are caused by diabetic complications or are related to disc problems. Later, in the same surgical report, Dr. Reynolds describes that he found that the disc was markedly degenerated when he removed the fragment.

Commission's decision to hear additional evidence is discretionary, and we will overturn Commission's decision only if we find that Commission "acted arbitrarily or abused its discretion." *Gander v. Shelby County*, 933 S.W.2d 892, 895 (Mo.App. E.D.1996). Point denied.

Dr. Reynolds' medical records and diagnostic tests performed at his request were attached to Bock's motion. However, there was not a signed report from Dr. Reynolds containing a synopsis of his opinion, the basis for that opinion and the reason for not submitting same at the hearing even though it may be obvious that the surgery was performed after the hearing. 8 CSR 20–3.030(2)(A)(5). In any event, Dr. Reynolds' record is cumulative to Dr. Musich's May 11, 1999, report in which he opined that Bock sustained a herniated disc at the L3–L4 level as a result of his fall. Therefore, Commission did not act arbitrarily or abuse its discretion in denying Bock's Motion to Submit Additional Evidence.

Judgment affirmed in part and reversed and remanded in part.

MOONEY, P.J. and SULLIVAN, J., concur.