**Paul Dean ALDRIDGE, Claimant–Respondent,**

v.

**SOUTHERN MISSOURI GAS CO., Employer–Appellant,**

and

**Missouri Insurance Guarantee Association, Insurer–Appellant.**

No. 25894.

Missouri Court of Appeals, Southern District, Division One.

April 20, 2004.

Kevin Hays Dunaway, Neale & Newman, L.L.P., Springfield, MO, for Respondents–Appellants.

Ellen E. Morgan, Ballwin, MO, for Claimant–Respondent.

JAMES K. PREWITT, Judge.

Employer and Insurer appeal from an award of the Labor and Industrial Relations Commission ("Commission") reversing the decision of the administrative law judge ("ALJ") that denied Paul Dean Aldridge's ("Claimant") claim for workers' compensation. Claimant had suffered a myocardial infarction (heart attack) and a subsequent stroke on August 31, 1999, which he claimed was a work-related injury arising out of and in the course of his employment and for which he sought permanent and total disability benefits.

Claimant, sixty-three years old at the time of his heart attack, was employed by Southern Missouri Gas in Mountain Grove and worked in "construction." As of August 12, 1999, his duties included burying service lines from the main gas line to a residence below ground level, utilizing picks, rakes and shovels. The gas service lines themselves were described as plastic tubing, 500 feet in length, rolled into coils and fastened with plastic ties. According to Claimant, handling a 500–foot coil usually required the work of two men.

On August 31, 1999, Claimant awakened around 5:00 a.m., made a pot of coffee, dressed, and drove the 33 miles from his home to Employer's office in Mountain Grove. On the job, he and another employee loaded three rolls of plastic gas line onto a company truck and drove to Ava. Claimant rode with James, a co-worker, and Riley, another co-worker, followed in another truck. The day was hot and humid.

In Ava, they finished a job they had previously started, raking rock, cleaning up the job site, and spreading grass seed and hay. They then drove to Rogersville, where the three of them ran another service line to connect gas service to a new home. This job took approximately "two, two and-a-half hours." At some time around 9:00 a.m., Claimant began to experience what he thought was indigestion and told his co-workers that he "had indigestion real bad[.]" However, he continued to work.

Upon leaving Rogersville, they drove toward Marshfield, but one of their trucks broke down and they were delayed approximately forty-five minutes offloading heavy equipment so the truck could be repaired. James left to accompany the truck for repair, while Claimant and Riley continued to Marshfield.

When the two of them arrived at the job site in Marshfield, Claimant was still feeling symptoms of indigestion, which he stated "kept gettin' a little bit worse." By himself, he unloaded three 500–foot rolls of service line and unrolled the line while his co-worker operated a trencher to bury the line below the ground.

Claimant continued to experience what he thought was indigestion, which he described "felt like somethin' on the inside

was gonna bust." When he began to feel faint, Claimant told his co-worker that he was sick and needed to sit down. He went to the truck and sat inside. The last he remembered was that he poured himself a cup of coffee, which he couldn't drink, and laid down in the seat of the truck. His next memory was being airlifted by helicopter to the hospital in Springfield.

The record indicates that Claimant was driven back to Employer's office in Mountain Grove and then transported to Cabool, where he was eventually taken to Texas County Memorial Hospital. On admission to the emergency room, Claimant was stabilized and administered "TPA," which aids in dissolving clots, but subsequently caused a hemorrhagic stroke. Claimant was then airlifted to Cox Medical Center in Springfield for further treatment and care. He was hospitalized for thirty-two days.

Claimant has not been able to return to work since August 31, 1999. Claimant states that presently he lacks strength and stamina and cannot do many activities he could do prior to the heart attack and stroke. He experiences difficulty remembering things and concentrating, walks with a limp, and his balance is poor, causing him to trip and stumble often.

On May 15, 2000, the Division of Workers' Compensation received Claimant's claim for compensation requesting permanent total disability benefits for a work-related injury. Employer filed its answer to the claim for compensation on November 15, 2000, contesting Claimant's allegation that his disability resulted from an accident or occupational disease arising out of and in the course and scope of his employment.

A temporary hardship hearing was held on March 22, 2002, to determine Claimant's eligibility for benefits. Claimant and his wife appeared and testified, and the depositions of two physicians were admitted into evidence, as well as Claimant's medical records from treating physicians and hospitals. Dr. Stephen Schuman was deposed on behalf of Claimant, and Dr. Keith Mankowitz testified via deposition on behalf of Employer.

On January 16, 2003, the ALJ for the Division of Workers' Compensation, found that "the claimant's heart attack did not arise out of the course and scope of his employment," and as a result, was not compensable. The ALJ further stated that she found "Dr. Mankowitz's opinion [that the claimant's work was not a cause of claimant's heart attack and that the work or work environment was not a substantial factor in the causation of the heart attack] more convincing than Dr. Schuman."

Upon Claimant's Application for Review, filed February 5, 2003, the Commission found "that the award of the administrative law judge is not supported by competent and substantial evidence." Stating that it was "more persuaded by the opinions expressed by Dr. Schuman," the Commission further "found that [C]laimant sustained a compensable accident arising out of the course of his employment[,]" and that Claimant's work and work duties were substantial factors in causing or exacerbating the heart attack. Accordingly, the Commission reversed the decision of the ALJ, awarding Claimant payment for past medical expenses, future medical care, and permanent and total disability benefits. Employer and Insurer appeal, presenting four points relied on.

Section 287.495, RSMo provides that on appeal from a final award of the Labor and Industrial Relations Commission, this court "shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any

of the following grounds and no other: (1) That the commission acted without or in excess of its powers; (2) That the award was procured by fraud; (3) That the facts found by the commission do not support the award; (4) That there was not sufficient, competent evidence in the record to warrant the making of the award."

■ Decisions which are clearly interpretations or applications of law are reviewed without deference to the Commission's judgment. *Lammert v. Vess Beverages, Inc.*, 968 S.W.2d 720, 723 (Mo. App.1998), *overruled in part on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 226 (Mo.banc 2003). Deference is afforded to the Commission on issues concerning credibility and weight to be given to conflicting evidence. *Id.* at 723.

Recently decided, *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo.banc 2003), instructs us that on review, rather than viewing the evidence and reasonable inferences therefrom in a light most favorable to the award, "[w]hether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Id.* at 223.

■ On appeal from an award by the Commission, this Court reviews the findings and award of the Commission rather than those of the ALJ. *Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 569 (Mo.App. 1995), *overruled in part on other grounds by Hampton*, 121 S.W.3d at 227. In situations where witnesses are deposed and do not testify live before the ALJ, this court defers to the Commission on matters such as witness credibility, as the Commission is just as able as the ALJ to determine credibility from the written record. *Thorsen v. Sachs Elec. Co.*, 52 S.W.3d 611, 619

(Mo.App.2001), *overruled in part on other grounds by Hampton*, 121 S.W.3d at 225.

■ Appellants' first point states:

The Labor and Industrial Relations Commission erred in finding the employee's heart attack to be work related because the Commission's decision relies upon the employee's evaluating physician's opinion (Dr. Shuman), which opinion is based upon facts not in evidence, and erroneous assumptions of fact, in that said decision is not supported by substantial and competent evidence, and should be reversed.

Appellants question the Commission's finding. Further, Appellants assign error to the Commission's finding that Claimant's heart attack was work related, "in that said decision is not supported by substantial and competent evidence[.]" Appellants contend that of the two conflicting medical opinions in evidence here, this Court should find the deposition testimony of Dr. Mankowitz more compelling, alleging a "potential for bias/prejudice from Dr. Schuman," because of his "long-standing personal and professional relationship with Claimant's counsel."

More to the point of this issue, Appellants argue that Claimant's pre-existing heart disease was the cause of the blood clot which, in turn, caused the heart attack, thereby negating a finding of work-relatedness of the heart attack. To the contrary, Dr. Schuman testified that "[i]n this case, it was the heart working harder and faster that eventually caused the clot that caused the heart attack."

Appellants also allege that Dr. Schuman's opinions are speculative and that "there is no reliable evidence that Claimant's work environment or work activities on August 31, 1999, constituted a substantial factor in the causation of the Claimant's heart attack."

The Commission reviewed deposition testimony provided by both expert witnesses and expressed its preference for Dr. Schuman's testimony, in the following findings:

The fact that claimant had pre-existing, but nondisabling, and asymptomatic coronary heart disease and other risk factors, making him more susceptible to having a heart attack, likewise does not propel his MI out of the realm of compensability. We find this situation analogous to the worker with pre-existing, asymptomatic degenerative disc disease of the spine, whose work duties exacerbate the disease to the point that, either one day or over time, it becomes disabling. [citations omitted] The issue in those types of case, as in the claim before us, is whether "the performance of usual and customary duties led to a breakdown or a change in pathology. The worsening of a pre-existing condition is a 'change in pathology.' " [citation omitted]

In determining the answer to that question, we are more persuaded by the opinions expressed by Dr. Schuman. The medical records did not support Dr. Mankowitz's conclusion that claimant had significant coronary artery disease in three arteries. Claimant had no cardiac symptoms prior to August 31, 1999. Dr. Mankowitz's statement that heat and humidity do not cause an MI is contrary to what this Commission and the courts have found in past cases based on expert medical testimony. We find that claimant's work duties on August 31, 1999, were a substantial factor in causing or exacerbating claimant's MI and subsequent stroke.

It is not necessary for us to determine whether claimant's MI began at 9:00 a.m. or whether he was experiencing angina at 9:00 a.m. As explained by Dr. Schuman:

Whether it was shoveling at 7:00 in the morning [sic]. Whether it was unrolling pipe or cutting it at 9:00 in the morning, or whether it occurred at 1:00 p.m. [sic]. Whether he had an MI to start with or whether he had angina first, tried to work through it and worked himself into a MI [sic]. All of those are work related.

We find claimant's work was a substantial factor in causing or exacerbating the MI, which led to the administration of TPA, which caused the stroke. We further find that he was not engaged in "a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life." § 287.020 RSMo. He was shoveling and unrolling and cutting pipe on a hot and humid, southern Missouri day in August, and by mid to late morning, he was performing the duties of two men. Whether he was already having an MI by that time or not, his double duties and the delay in seeking treatment exacerbated the extent of damage done to his heart. Certainly, this is more exclusive to claimant's employment than walking with lunch through a break room (*See, Drewes v. TWA*, 984 S.W.2d 512 (Mo. banc 1999)); standing up after sitting on one's foot in a chair (*See, Kasl v. Bristol Care, Inc.*, 984 S.W.2d 852 (Mo. banc 1999)); or, walking across a floor or up a staircase (*See, Bennett*, 80 S.W.3d 524.) Claimant's MI arose out of the course of his employment.

In this case, the expert testimony was received by deposition. Therefore, where no live witnesses testify, and the Commission is just as able as the ALJ to determine the credibility of deposed witnesses from the written record, we defer to the Commission on its credibility determina-

tions of deposition testimony. *Thorsen*, 52 S.W.3d at 619.

■■ Additionally, deciding which one of two conflicting medical theories it should accept is a determination particularly for the Commission. *Bock v. Broadway Ford Truck Sales, Inc.*, 55 S.W.3d 427, 439 (Mo.App.2001). A determination of what weight it will accord expert testimony on matters relating to medical causation lies within the Commission's sole discretion and cannot be reviewed by this Court. *Id.* at 438.

We defer to the Commission on its finding that Dr. Schuman causally connected Claimant's injury to the August 31, 1999 heart attack and that Claimant's heart attack was work related. Point I is denied.

■ Appellants' second point is set forth below:

The Labor and Industrial Relations Commission erred in finding the employee's wage rate to be as stated on the claim because the Employer/Insurer failed to file an answer within thirty days, because failing to file an answer doesn't admit ultimate legal conclusions, such as wage rate, in that there was no evidence offered by the employee on wage rate and the employee, through counsel, stipulated to a wage rate of $260.00 per week, and the Commission decision finds the wage rate to be admitted as on the claim form of $550.00 per week.

Claimant's claim for compensation was dated May 1, 2000, and received by the Division on May 15, 2000. Employer's answer was dated November 8, 2000, and received by the Division on November 15, 2000. Division of Workers' Compensation regulation 8 CSR 50–2.010(8)(B) provides that upon the filing of an untimely answer to a claimant's claim for compensation, "the statements of fact in the Claim for Compensation shall be deemed admitted for any further proceedings." According to the Division's printed form, the Division required an answer to be filed "within 15 days of receipt of copy of claim for compensation."

The ALJ found that the parties stipulated to the following: "If the claimant fails on the issue of whether Employer's [sic] answered late, and as a result the allegations in the claim are deemed admitted, the parties agree that at the time of the claimed accident Claimant's average weekly wage was $390, sufficient to allow the compensation rate of $260 for temporary total and permanent partial disability benefits." The finding by the ALJ, that Claimant's heart attack was "not compensable," rendered "all other issues ... moot[,]" and the issue of Employer's untimely answer was not addressed.

However, the Commission found that Claimant's heart attack was compensable and further that, by failing to file a timely answer to Claimant's claim for compensation, Employer admitted that the average weekly wage for claimant was $550.00, as stated in his claim, and that the Commission was required to find for Claimant on this matter.

■ Appellants contend that wage rate is an "ultimate legal conclusion." We disagree. Wage rate is a question of fact, to be determined by the Commission according to the computations provided by statute. Given that Appellants failed to file a timely answer, the wage rate as stated on Claimant's claim for compensation is to be deemed as admitted by Appellants. *See Lammert v. Vess Beverages, Inc.*, 968 S.W.2d at 723; *Lumbard–Bock v. Winchell's Donut Shop*, 939 S.W.2d 456, 457 (Mo.App.1996), *overruled in part on other grounds by Hampton*, 121 S.W.3d at 227; *Henderson v. Chrysler Corp.*, 601

S.W.2d 645, 648–49 (Mo.App.1980), *overruled in part on other grounds by Hampton*, 121 S.W.3d at 231.

To the matter of the parties' stipulation involving wage rate, the Commission noted that Claimant "stipulated that if the administrative law judge found that the allegations in the claim for compensation were not found to be admitted, then the wage rate is $260.00 per week." As there was no such determination made by the ALJ, and upon the Commission's finding that Employer admitted the facts alleged in the claim by its failure to file a timely answer, we find that the stipulation is not controlling. Point II is denied.

■ Appellants' third point is set forth below:

The Labor and Industrial Relations Commission erred in ordering the Employer/Insurer to provide future medical care and treatment for the Employee's heart attack, even if the claim is found compensable, because the Employee failed to prove that future medical care and treatment is due to the conditions of the work accident in that the Commission's decision relies solely upon the report of Dr. Schuman of August 10, 2001, which report is the only evidence upon which this Commission relied, and said report does not establish a causal connection between the alleged work accident and the recommended care and treatment.

Dr. Schuman's report referenced by Appellants in their point relied on specifically addresses the need for future medical treatment which he described as being "related to the work activities of August 31, 1999[.]" Schuman opined that future treatment would include: medications, such as beta blockers, nitroglycerin, and Lipitor; and lipid profiles and liver function tests every three to six months. Further, Dr. Schuman linked the necessary

medical treatment now required with the injury suffered by Claimant due to the heart attack:

A. The acute inferior myocardial infarction is medically causally related to the work activities of [August 31, 1999].

B. The left ventricular dysfunction is the result of the myocardial infarction.

C. The hemorrhagic stroke with its sequelae is the result of the treatment (TPA) for the myocardial infarction.

■ The burden is upon Claimant to show by a "reasonable probability" that he requires future medical treatment by reason of his work-related injury. *Cochran v. Ind. Fuels & Resources, Inc.*, 995 S.W.2d 489, 496 (Mo.App.1999). Evidence of the specific nature of such treatment is not required. *Sharp v. New Mac Elec. Cooperative*, 92 S.W.3d 351, 354 (Mo.App.2003), *overruled in part on other grounds by Hampton*, 121 S.W.3d at 224. The Commission has determined that Claimant's heart attack and subsequent stroke are compensable, as they were related to his work activities on August 31, 1999, and we agree. The evidence here supports the award of future medical care benefits. Point III is denied.

■ Appellants' fourth point states:

The Labor and Industrial Relations Commission grossly erred in entering an award finding the Employee permanently and totally disabled because at the hearing before the Administrative Law Judge, the parties stipulated there would be no evidence on nature and extent of disability taken, and no evidence was offered thereon, or that issue tried before the Administrative Law Judge, and therefore, the Commission acted in excess of it's [sic] authority in that this case was tried before the Ad-

ministrative Law Judge (and therefore the Commission) on a hardship hearing/temporary award, and the decision of the Commission ignores that stipulation, exceeds the jurisdiction of the Commission at this point in time, and prevents the Employer/Insurer from developing evidence and contesting the nature and extent of disability claimed by the Employee.

Appellants allege that "the parties stipulated there would be no evidence on nature and extent of disability taken, and no evidence was offered thereon, or that issue tried before the [ALJ]." Stating that "[t]he decision of the Commission was procured by fraud[,]" Appellants contend that the Commission ignored the stipulation of the parties, in that "Counsel for the Employee/Respondent in this cause stipulated that no evidence would be taken on nature and extent of disability since that issue was not ripe for presentation to the Administrative Law Judge or the Commission[,]" and that "Employer/Insurer in this cause did not offer any evidence on nature and extent of disability given the stipulation of the parties."

Preliminary remarks made by the ALJ prior to the presentation of evidence indicate there was a stipulation between the parties regarding the following issues:

On or about August 31st, 1999, Southern Missouri Gas Company was an employer operating subject to Missouri Workers' Compensation law; the employer's liability was fully insured at the time by Reliance, but it is insured now by Missouri Property and Casualty Insurance Guarantee Association; on the alleged injury date of August 31st, 1999, Dean Aldridge was an employee of the employer; the claimant was working subject to the Missouri Workers' Compensation law; the parties agree that on or about August 31st, 1999, the claimant sustained a heart attack and a subsequent stroke resulting from TPA administered for the heart attack.

The parties disagree it is an accident or occupational disease which arose out of and in the course and scope of the employment under the Workers' Compensation law. This employment occurred in Webster County. The claimant notified the employer of his injuries required by Section 287.420; the claimant's claim was filed within the time prescribed by Section 287.430.

. . . .

The claimant is alleging that the Answer was not timely filed. If the claimant fails on the issue of whether the employer's Answer was late, and as a result the allegations of the claim are not deemed to be admitted, the parties agree that at the time of the claimed accident or occupational disease, claimant's average weekly wage was $390.00, sufficient to allow the compensation rate of $260.00. And that agreement would be effective if the allegation of the rate of the claim is not found to be admitted.

There's been no temporary total disability benefits paid, and the employer has paid no medical benefits. The attorney fee being sought is 25 percent.

The issues for resolution, and the only issues upon which evidence will be taken are: One, whether the allegations in the claim are being admitted because the Answer was not timely filed; two, whether the claimant sustained an accident or occupational disease; three, whether the accident or occupational disease arose out of the course and scope of employment; four, whether the accident or occupational disease caused the injuries and disabilities for which benefits are now being claimed; five, whether the employer is obligated to pay for past medical expenses; six, whether the

claimant has sustained injuries that will require future medical care in order to cure and relieve the claimant of the effects of the injuries; seven, what is the proper rate?; nine [sic], any temporary total benefits owed to the claimant including past due from the date of the injury to the present and any in the future.

Counsel, have I fairly and accurately stated the claims for the record?

[COUNSEL FOR EMPLOYEE]: Yes, ma'am.

[ALJ]: Please confine your evidence to the issues presented. Any evidence which is not relevant to the issues presented will be ruled out of order upon proper objection.

Appellants also contend that "this case was tried before the [ALJ] (and therefore the Commission) on a hardship hearing/temporary award, and the decision of the commission ignores that stipulation[.]" Although we find no request for a hardship hearing from any party in the record, as required under 8 CSR 50–2.010(13), the ALJ references the issue, and Claimant does not dispute it. Therefore, this point is reviewed in accordance with Appellants' contention.

■ Upon Claimant's application for review, the Commission entered its final award allowing compensation "as provided by § 287.480 RSMo" and reversing the decision and award of the ALJ which denied compensation on the basis that Employer was not liable for Claimant's disability. Ultimate decisions regarding an employer's liability are reviewable by the appellate court, regardless of the denomination of the Commission's award. *See Woodburn v. May Distributing Co., Inc.,* 815 S.W.2d 477, 481 (Mo.App.1991), *overruled in part on other grounds by Hampton,* 121 S.W.3d at 229.

■ 8 CSR 50–2.010(14) provides that "[p]rior to hearing, the parties shall stipulate uncontested facts and present evidence only on contested issues." *Boyer v. Nat'l Express Co., Inc.,* 49 S.W.3d 700, 705 (Mo.App.2001). "A stipulation should be interpreted in view of the result which the parties were attempting to accomplish." *Id.*

As this matter was decided after a hardship hearing held to only determine temporary benefits, we find that the Commission "acted without or in excess of its powers," in that the Commission should not have made a determination regarding permanent total disability, as that issue was not to be tried, was not tried, and thus was not properly before the Commission.

Accordingly, we affirm the decision of the Commission except for its determination that Claimant suffers permanent and total disability, which determination is reversed, and this cause is remanded to the Commission for further proceedings, not inconsistent with this opinion.

BARNEY, P.J., and GARRISON, J., concur.