Patricia SARTOR, Respondent,

v.

**MEDICAP PHARMACY, Appellant.**

No. WD 64843.

Missouri Court of Appeals,
Western District.

Jan. 17, 2006.

Richard J. Fitzgerald, Esq., St. Louis, MO, for appellant.

Roger G. Brown, Esq., Jefferson City, MO, George E. Fitzsimmons, Esq., Co-Counsel, St. Louis, MO, for respondent.

Before SMART, P.J., LOWENSTEIN and HARDWICK, JJ.

HAROLD L. LOWENSTEIN, Judge.

### INTRODUCTION

Pat Sartor (Claimant), a pharmacist, filed a claim for workers' compensation for permanent total disability for physical disabilities suffered while she was an employee of Medicap Pharmacy (Medicap). The facts concerning the accident were submitted pursuant to a joint stipulation. This appeal revolves around two issues: (1) did the injuries arise out of, and in the course of, the employment, and (2) the nature and extent of those injuries. The Labor and Industrial Relations Commission (Commission) affirmed the findings, conclusion of total disability, and award rendered by the Administrative Law Judge. Similar claims, based on the same underlying facts and with the same results, were obtained in the cases of three other employees (Cross (WD64846), Shirts (WD64844), and Branson (WD64845)). Hand down of those cases is concurrent with this appeal.

### FACTS

In late March 1998, a car crashed into Medicap's building resulting in a large amount of water and other contaminants soaking the pharmacy's carpet. On April 8, Medicap had a mold and mildew retardant, Ultra Fresh (UF), applied to the carpet while the employees were present. Claimant immediately experienced wheezing, burning eyes, shortness of breath, and general respiratory problems. Several days later, Claimant broke out with hives. Within thirty days Claimant additionally suffered from a skin rash, fatigue, headache, nausea, eating disorder, inability to concentrate, and diarrhea. The carpet was removed at the end of April, but Claimant then discovered blood in her urine, and experienced dizziness and exhaustion. She saw her doctor in early May and was admitted to the University of Missouri Hospital for examination. In early May, after suffering dry heaves, she called Medicap's home office to say she could no longer work at the pharmacy because of all of her symptoms.

During the summer of 1998, Claimant worked for no more than eight hours a month at various other places, including the attorney general's office. She quit all employments because of exhaustion and inability to concentrate. In July 2003, her husband, a pharmacist, testified to her inability to concentrate after the exposure, and that would preclude him from hiring her to work in a pharmacy. He stated that her symptoms had gotten worse and that she was too fatigued to perform many of her household duties.

Claimant's evidence was as follows: Treating physicians Schneider and Caywood testified that the active ingredients and, particularly, a substance called tributylin contained in UF caused the symptoms exhibited by Claimant, and those symptoms (difficulty in breathing, fatigue, and memory loss) were a result of the exposure. They testified the symptoms and problems were permanent and rendered her permanently disabled. Examining physician Hyers opined Claimant's respiratory and memory problems were a result of the toxic components in UF. He, too, said she would be lucky to "go through the activities of daily living." Examining doctor Johnstone, a neuropsychologist, testified Claimant had a cognitive disorder with mood and personality changes due to the toxin exposure. Johnstone said these disorders had lasted for four years, and he did not expect there would be any improvement in the future. Toxicologists Martinez and Lipsey said UF was dangerous and highly toxic, should not have been used in a place that had little or no ventilation, and the immediate symptoms shown were consistent with the exposure to UF. Lipsey opined that the symptoms immediately exhibited by Claimant, the other three claimants, and Vickie Olive, were consistent with exposure to "high levels of toxic molds." Lipsey stated that the symptoms of the four employees were consistent with their exposure to high levels of organic tin contained in UF. Vickie Olive, an environmental specialist with the state, had been in the pharmacy just after the carpet had been removed. Olive had handled a sample of the carpet and immediately experienced headaches, diarrhea, nausea, hives, and swelling. A vocational expert, Swearingen, deemed Claimant unemployable and permanently disabled.

Medicap's evidence is summarized as follows: Dr. Long, a toxicologist, said the carpet was not in the pharmacy long enough to provide the toxicity to cause the problems Claimant asserted. He disagreed with Dr. Lipsey's opinion and felt Claimant was not disabled due to the exposure to UF on Medicap's premises. Dr. Oliveri interviewed Claimant, reviewed her medical records, and conducted several neuropsychological tests. He found no residual brain dysfunction and determined Claimant suffered from clinical depression. Ms. Karen Kane, a rehabilitation counselor, determined that Claimant was capable of procuring full-time gainful employment. Dr. Cantrell concluded that Claimant's problems stemmed from pre-existing depression and the drugs taken for that condition. Medicap introduced a test report done on samples of the carpet that had been sprayed. It showed no detectible limits of tributylin.

Temporary benefits were denied. However, at the hearing for permanent benefits, the administrative law judge found Claimant's experts more credible than those of Medicap. The award of permanent total disability resulting from an accident arising out of, and in the course of employment, was based in part on the finding that Claimant, the other three employees, and the "outside party" (Olive) suffered the same symptoms during the time just following the spraying the pharmacy's rug. The Commission was also persuaded by the fact that Claimant's experts included treating physicians. A majority of the Commission issued a final award affirming the ALJ's decision.

Medicap raises three points on appeal. The first point asserts there was not the quantum of substantial evidence to support the award, and that the award was not substantial evidence under Section 287.495(4), RSMo.2000, to show a causal connection between the alleged "complaints" and the exposure to UF in April

1998. The second point attacks the sufficiency of the evidence to support a conclusion that claimant employee was permanently and totally disabled. Finally, it is advanced that the Commission's award as to future medical treatment was not definite as to the medical conditions related to the injury.

## STANDARD OF REVIEW

■ Review is governed by *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003), where the Court held the Commission's award is to be examined upon the whole record and not to be set aside if not contrary to the overwhelming weight of the evidence and is supported by competent and substantial evidence. *Id.* at 222–23. Even if there is evidence that would support a contrary finding, this court should not substitute its opinion of the facts for that of the Commission. *K & D Auto Body, Inc. v. Div. of Employment Sec.*, 171 S.W.3d 100, 103 (Mo.App.2005). Questions of medical causation of an injury are issues of fact for the Commission which is the sole judge of credibility as well as the weight of the testimony. *George v. City of St. Louis*, 162 S.W.3d 26, 30 (Mo.App.2005).

## DISCUSSION OF POINTS ON APPEAL

■ Although not denominated as a point, but running through Medicap's brief is an invitation to the court to reverse the Commission's final award based on the prior decision of the ALJ in denying benefits following the hearing for temporary benefits. Suffice it to say, the findings and ruling of the Commission on the permanent award contain the answer to this invitation: temporary awards are not final and can be modified from time to time, and the legislature contemplated that an award on a final hearing may differ from that of a temporary hearing. *Korte v. Fry–Wagner Moving & Storage Co.*, 922 S.W.2d 395, 397–98 (Mo.App.1996); *Welch v. Eastwind Care Ctr.*, 890 S.W.2d 395, 398 (Mo.App. 1995).

■ Medicap's first point asserts that the decision of medical causation of Claimant's injuries is contrary to the overwhelming weight of the evidence. Medicap states Claimant's "main expert, Dr. Richard Lipsey's, testimony is simply not credible and based on speculation and conjecture"; that its witnesses were more credible; and that Claimant's experts were not given certain information from Medicap's experts. What Medicap asks this court to do is to judge credibility and determine the weight of expert medical evidence. The eastern district in *Uhlir v. Farmer* explicitly said, "We cannot reweigh, as Appellant asks us to do, the weight to be given to the medical opinions presented to the Commission." 94 S.W.3d 441, 445 (Mo.App.2003) (overruled on other grounds by *Hampton*, 121 S.W.3d 220). The southern district in *Aldridge v. Southern Missouri Gas Co.*, 131 S.W.3d 876, 882 (Mo.App.2004), also declined to reweigh evidence. The court said that when deciding which of the two medical theories should be accepted, the determination is for the Commission, and the weight afforded a medical expert's opinion lies within its sole discretion. *Id.* In this case, the Commission determined the Claimant's evidence on causation to be the most credible. There was substantial evidence supporting the Commission's conclusion. Point denied.

■ The second point is similar to the first point in that it couches a sufficiency of the evidence argument based on Medicap's assertion that Claimant's experts merely speculated on whether she was totally disabled. Medicap proclaims the testimony of Dr. Johnstone was "not persuasive," and that "Mr. Swearingen's tes-

timony is based on speculation and conjecture." This point is denied.

 The final point seems to attack the final award as not containing sufficient findings as to Claimant's physical infirmities that will require future medical treatment. Medicap is correct that the burden is on the claimant to show a reasonable probability that he or she requires further medical treatment because of an injury suffered at work. However, evidence as to the specific nature of such treatment is not required where the Commission has determined the injury was compensable. *Id.* at 883. This point is denied.

The judgment of the Commission is affirmed.

All concur.