Jackie LINGERFELT, Claimant–
Appellant

v.

ELITE LOGISTICS, INC., and Treasur-
er of State of Missouri as Custodian of
Second Injury Fund, Respondents.

No. 28506.

Missouri Court of Appeals,
Southern District,
Division One.

April 16, 2008.

Motion for Rehearing or Transfer to
Supreme Court Denied May 9, 2008.

Application for Transfer Denied
June 24, 2008.

Paul F. Reichert, Margaret A. Schlachter, Springfield, MO, for appellant.

Jerry A. Harmison, Jr., Harmison & Pearman, P.C., Springfield, MO, for respondent Elite Logistics.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan F. Colburn, Asst. Atty. Gen., Jefferson City, MO, for respondent Second Injury Fund.

JOHN E. PARRISH, Presiding Judge.

Jackie Lingerfelt (claimant) appeals a workers' compensation award by the Labor and Industrial Relations Commission (the commission). He contends the commission erred in denying his request for permanent total disability benefits and his claim against the second injury fund. This court affirms.

Claimant was employed by Elite Logistics, Inc., (employer) as a truck driver. On May 19, 2001, claimant was operating a "hostler buggy," a one-person vehicle used to move trailers around employer's warehouse facility. Claimant was taking trailers from a loading dock to a back lot. He did not see a hole in the pavement that had filled with water from rains that had

occurred earlier that day. Claimant's vehicle hit the hole that he estimated was two or three feet in diameter and 15 inches deep. Claimant bounced out of his seat in the vehicle, came back down, "went down a ways with th[e] air seat," then "shot right back up" hitting his head. Claimant said he hit his head, jammed his neck "and everything down [his] back." He was dazed and stopped work for ten or fifteen minutes. Claimant explained, "I sat there and finally got things together, and I finished putting the trailers in the dock. Then I went up and told my supervisor, the people up at the office, that I had had an accident. And they gave me a report to fill out."

Claimant finished his shift the day of the accident. He continued his regular work duties until June 9, 2001, when he informed the company dispatcher that he was hurting too bad to continue working.

Claimant had been examined by employer's company doctor, Dr. Jeffrey Woodward, the week after his accident. At the time of the appointment, claimant had been experiencing pain in his neck, between his shoulder blades, and in his shoulders. He said his fingers would tingle; that his arm hurt a little bit and his left leg was starting to hurt. Ninety-nine percent of his pain was on his left side.

After an MRI claimant was referred to a neurosurgeon, Dr. Wade Ceola, who evaluated claimant and recommended surgery due to a "severe canal compromise" in the cervical spine and increased risk for spinal cord damage. Dr. Ceola performed surgery on claimant November 9, 2001. He performed a cervical discectomy and arthrodesis at C5–6 and C6–7 and bone grafting and plating from C5 to C7.

After the surgery claimant experienced "almost 100%" improvement in the pain in his neck. However, after the surgery, but before his release from the hospital, claim-

ant experienced "a fair amount of muscle spasm" in his neck. He was administered IV medication for the spasm. He experienced clumsiness and imbalance, which is consistent with side effects of IV medication for muscle spasms. His hospital stay was extended for two days due to the spasms. Claimant was discharged from the hospital November 12, 2001. At the time of his discharge claimant was ambulatory, was tolerating a regular diet, and his pain was being controlled with oral medication.

Two days following his discharge, claimant was taken to an emergency room with symptoms of fever and hallucinations. His wife reported that claimant had experienced multiple falls since his release from the hospital. A CT scan of defendant's head revealed no abnormality. Emergency room records indicate that claimant acted appropriately. The attending physician did not witness any incident of confusion by claimant. A lumbar puncture was suggested in order to rule out meningitis; however, claimant left the hospital against medical advice before the procedure was complete.

Dr. Ceola saw claimant December 11, 2001, for a routine follow-up. Claimant and his wife reported that claimant progressed well the two weeks immediately following surgery, but then developed stroke-like symptoms. Dr. Ceola noted that claimant exhibited slurred speech; that he had difficulty with tongue function and slight facial asymmetry. Claimant reported numbness in his lower extremities, "left more so than right." However, claimant was not experiencing pain or other problems with his neck.

An MRI of claimant's neck showed no evidence of a stroke. Because claimant exhibited symptoms compatible with a stroke, Dr. Ceola ordered a repeat MRI

examination of the brain and an MRA examination of the vessels to ensure there had not been a stroke or that there was no small vessel disease.

Dr. Ceola saw claimant for a second follow-up examination January 17, 2002. The MRI that had been performed did not disclose the cause of claimant's stroke-like symptoms. Claimant was referred to Dr. G.F. Wong, a neurologist, due to claimant's continued symptoms.

Dr. Wong examined claimant January 18, 2002. Dr. Wong concluded that claimant's symptoms were the result of small vessel strokes related to claimant's pre-existing heart condition, patent foramen ovale, and paroxysmal atrial fibrillation. His report recites:

> It is with reasonable certainty ... that the patient's events that have persisted long after his on-the-job accident of 5/19/01 and cervical surgery by Dr. Ceolla [sic], are not related to either of these but rather caused by multiple strokes from his heart problems. The "hole" in his heart has most likely been present since birth. Furthermore, the nature of these cerebral infarctions or strokes, being small vessel in character, are uncharacteristic for a stroke that might be seen after cervical surgery.

Claimant also saw a cardiologist, Dr. Howard Schwartz. Dr. Schwartz's report states that claimant did not report chest pain, shortness of breath, lightheadedness, palpitations, or swelling. His report notes that claimant and claimant's wife thought claimant might be over medicated; that because of this he could not function adequately. Dr. Schwartz encouraged claimant to discuss with his other treating physicians the possibility of reducing or eliminating some of the medications claimant was taking. Dr. Schwartz referred claimant to a physician with pain specialization. Claimant chose to not see the physician Dr. Schwartz had suggested.

When claimant saw Dr. Ceola on January 17, claimant had complained of low back pain. An MRI and a CT myelogram of claimant's lumbar spine were ordered. The tests revealed moderate degenerative disc disease and mild retrolisthesis at L3–4. Claimant did not wish to pursue physical therapy, bracing, or pain management. His preference was to pursue surgical intervention. Dr. Ceola performed a posterior lumbar interbody fusion on March 4, 2002. Claimant did well post-operatively but had one episode of confusion that was believed to be a reaction to medication. The back surgery resolved claimant's back pain. On October 17, 2002, Dr. Ceola found that claimant had achieved maximum medical improvement and released claimant from his care.

The findings of the administrative law judge who heard claimant's case were adopted by the commission (with a modification as to the rate of compensation). They include:

> After carefully considering all of the evidence, I find that the only condition of the claimant which was caused by the work-related injury is his cervical condition. In reaching this conclusion, I relied primarily on the opinions of Dr. Ceola, Dr. Schwartz and Dr. Wong. I find their opinions the most credible and, therefore, give them substantially greater weight than the other opinions. This is because they are treating physicians and have the most knowledge of the claimant's injury and course of treatment. They are also specialists that have treated him for specific conditions and have, therefore, a broader foundation for reaching their opinions. As a result of this ruling, I find all the other conditions for which claimant is seeking compensation, including the back condi-

tion and the stroke symptoms, to not be work-related.

The commission awarded compensation for 20% of the body as a whole as a result of claimant's cervical injury resulting in a cervical fusion.

The commission found, with respect to claimant's claim against the second injury fund (again adopting the findings of the administrative law judge):

> Claimant and his wife testified that he was in good health prior to the date of the injury and that his pre-existing conditions of back pain, depression, hepatitis, and his heart condition were not symptomatic and/or did not interfere with his ability to work. Therefore, I find that he did not have any pre-existing disability to reach the thresholds of 12.5% of the body or 15% of an extremity to trigger enhanced permanent partial disability. Furthermore, although claimant has been found permanently and totally disabled by Dr. Belz and Wilbur Swearingin, this is the result of conditions that have come into existence or worsened subsequent to the work-related injury of May 19, 2001, and therefore are not relevant to Second Injury Fund liability for permanent total disability. I therefore find that the Second Injury Fund is not liable for any benefits in this case.

*Panzau v. JDLB, Inc.,* 169 S.W.3d 122 (Mo.App.2005), explains:

> The Missouri constitution, article V, section 18 provides that judicial review of the Commission's award is to determine whether the award is supported by competent and substantial evidence upon the whole record. *See Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo.banc 2003). "This standard would not be met in the rare case when the award is contrary to the overwhelming weight of the evidence." *Id.* at 223. By statute, we "shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the commission do not support the award;
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award."
>
> Section 287.495.1 [1].

*Id.* at 125.

■■■ Claimant's first point on appeal argues that the commission erred in finding "that claimant did not have pre-existing disabilities significant enough to combine with the May 19, 2001 back injury to create second injury fund liability in that the commission's decision was not supported by competent and substantial evidence and was contrary to the overwhelming weight of the evidence."

As a prerequisite to imposing liability on the Second Injury Fund, a claimant must first establish that a pre-existing permanent partial disability existed at the time the work-related injury was sustained and was of such seriousness as to constitute a hindrance or obstacle to employment or re-employment.

*Muller v. Treasurer of Missouri,* 87 S.W.3d 36, 40 (Mo.App.2002), citing *Karoutzos v. Treasurer of State,* 55 S.W.3d 493, 498 (Mo.App.2001). *See* § 287.220 regarding the threshold extent of a preexisting permanent partial disability that must exist in order for there to be second injury

---

1. References to statutes are to RSMo, 2000.

fund liability. For there to be second injury fund liability, there must have been a pre-existing disability that combines with a subsequent disability and " '(1) the two disabilities combined result in a greater overall disability than that which would have resulted from the new injury alone and of itself; or (2) the preexisting disability combined with the disability from the subsequent injury to create permanent total disability.' " *Muller, supra,* quoting *Reese v. Gary & Roger Link, Inc.,* 5 S.W.3d 522, 526 (Mo.App.1999).

As this court perceives claimant's argument as to Point I, claimant points to medical testimony presented on his behalf that differed from that on which the commission relied in denying second injury fund liability. This is a credibility issue. "The weight to be given evidence rests with the Commission and it alone determines the credibility of witnesses." *Thornton v. Haas Bakery,* 858 S.W.2d 831, 833 (Mo.App.1993). When there is competent evidence that conflicts, resolution of the conflict lies with the commission. Its choice is binding on this court. *Id.* The commission found that the conditions other than the cervical injury that occurred as a result of the May 19, 2001, accident came into existence or worsened subsequent to that injury; that they were not relevant to second injury fund disability. That finding is supported by competent and substantial evidence upon the whole record. Point I is denied.

Point II argues that the commission erred in finding there was no causal connection between claimant's May 19, 2001, injury and his lumbar spine medical condition; "that the overwhelming weight of the evidence supported the conclusion that there was a causal relationship."

To be entitled to workers' compensation benefits, the claimant has the burden of proving not only that the accident arose out of and in the course of his employment but that the alleged injury or death was directly caused by the accident. *Landers v. Chrysler Corp.,* 963 S.W.2d 275, 279 (Mo.App.1997). In other words, a claimant must establish a causal connection between the accident and the compensable injury. *McDermott v. City of Northwoods Police Dep't,* 103 S.W.3d 134, 138 (Mo.App.2002). *Kerns v. Midwest Conveyor,* 126 S.W.3d 445, 453 (Mo.App.2004).

Claimant argues that it is not possible to say there was no connecting link between his May 19, 2001, accident and the surgery he underwent for his lumbar injury. He argues that sensitivity to medications he received and the falls he experienced following his first surgery contributed to his later ailments that required additional medical treatment. Claimant acknowledges, however, that he suffered "small vessel strokes," rather than intraoperative strokes.

As discussed with respect to Point I, claimant bears the burden of proving causation between the injury for which he seeks compensation and the accident that arose out of and in the scope of his employment. *Kerns, supra.* The commission found the only condition caused by the May 19, 2001, accident was claimant's cervical condition; that all other conditions for which he sought compensation, including the back condition and stroke symptoms, were not work-related. The commission based its findings on the medical opinions of Dr. Ceola, Dr. Wong, and Dr. Schwartz. The findings are based on competent and substantial evidence based on the whole record. Point II is denied.

Point III contends the commission erred in not finding claimant was permanently and totally disabled as a result of the May 19, 2001, accident or as a result of

the injury that resulted from that accident combined with industrial disabilities that existed prior to that accident. He argues that the findings of the commission were contrary to the testimony of witnesses he produced, Dr. Vale, Dr. Belz, and Mr. Swearingin.

Dr. Vale evaluated claimant February 18, 2003. She found claimant to be totally disabled "most significantly related to the impact of his residual functional limitations associated with his lumbar sacral spine condition and surgery and his post-stroke status when combined with his other medical conditions." Dr. Belz evaluated claimant June 11, 2003. His opinion was that claimant sustained an intraoperative stoke during the cervical surgery; that the stroke and post-surgery medication caused claimant to fall which, in turn, necessitated lumbar surgery. Dr. Belz concluded that, therefore, claimant was permanently and totally disabled as a result of the occupational injury that occurred May 19, 2001. Neither Dr. Vale nor Dr. Belz reference claimant's pre-existing heart condition in their evaluations. Wilbur Swearingin, a certified rehabilitation counselor, testified that claimant was permanently and totally disabled due to the medical restrictions, narcotic prescriptions, limited education, age, and job history.

The commission found the testimony of treating physicians, Dr. Ceola, Dr. Wong, and Dr. Schwartz, more persuasive. Dr. Ceola performed claimant's cervical surgery and lumbar spine surgery. He stated claimant's low back injury was not related to the May 19, 2001, accident. His evaluation was that claimant's low back condition was degenerative in nature.

Dr. Wong concluded that claimant's symptoms, the stroke-like symptoms and falls, were the result of small vessels strokes related to claimant's pre-existing heart condition, patent foramen ovale and paroxysmal atrial fibrillation. (The patent foramen ovale was identified by Dr. Schwartz.)

Dr. Ceola and Dr. Wong found claimant's cervical condition to be directly related to the May 19, 2001, work-related accident. Dr. Ceola concluded that the other ailments for which claimant was treated were not related to the May 19, 2001, accident. Dr. Ceola found no evidence to support Dr. Belz's finding that claimant suffered an intraoperative stroke.

■ The commission found the opinions of Dr. Ceola, Dr. Wong, and Dr. Schwartz more credible. Claimant challenges that determination. As previously discussed, credibility determinations regarding medical testimony in workers' compensation cases are issues of fact for the commission. *Thornton v. Haas Bakery, supra; see also Baird v. Ozarks Coca–Cola/Dr. Pepper Bottling Co.,* 119 S.W.3d 151, 154 (Mo.App. 2003). When a claimant's right to compensation depends on the acceptance of one of various competing medical theories, the issue is one of fact and the commission's finding will not be disturbed unless it is not supported by substantial evidence or contrary to the overwhelming weight of the evidence. *Baird, supra.*

■ The commission's findings are supported by competent and substantial evidence. There was competent and substantial evidence that supported the finding that claimant's conditions other than the cervical injury were subsequent to and unrelated to the May 19, 2001, accident. Post-accident worsening of pre-existing disability preventing reasonable employment is not a compensable injury entitling a claimant to total disability benefits. *Elrod v. Treasurer of Missouri as Custodian of Second Injury Fund,* 138 S.W.3d 714, 717 (Mo.banc 2004); *Lawrence v. Joplin R–VIII School Dist.,* 834 S.W.2d 789, 793–

94 (Mo.App.1992). Point III is denied. The award is affirmed.

BATES and SCOTT, JJ., concur.