Byron PROFFER, Respondent,

v.

FEDERAL MOGUL CORPORATION
and St. Paul Travelers Insurance,
Appellants,

and

Treasurer of the State of Missouri,
Custodian of the Second Injury
Fund, Respondent.

No. SD 30871.

Missouri Court of Appeals,
Southern District,
Division Two.

May 10, 2011.

Mary Ann Lindsey, Evans & Dixon LLC, Springfield, MO, for Appellants.

James N. Guirl, II, St. Louis, MO, for Respondent Proffer.

Chris Koster, Atty. Gen., Jonathan J. Lintner, Asst. Atty. Gen., For Respondent Second Injury Fund.

DANIEL E. SCOTT, Chief Judge.

Federal Mogul Corporation (Employer) appeals from a workers' compensation award granting Byron Proffer (Claimant) permanent total disability benefits, past medical expenses, and six months of temporary total disability.

## Background

Claimant started working for Employer, a piston manufacturer, straight out of high school in 1968. He worked for years in the maintenance department, where his duties involved heavy lifting of up to 80 pounds. He hurt his back at work in 1991, but resumed normal job activities after surgery and 6–8 weeks off. In 1997, he had a work-related knee injury that ultimately required three surgeries through August 2000, after which he returned to normal work duties.

In October 2004, Claimant was pushing a 55–gallon drum up a workplace ramp when a wheel fell in a hole, causing him to twist and strain his neck.[1] Employer sent Claimant to Dr. Hunt, who for several days treated Claimant for numbness, headaches, and neck pain shooting down to his shoulders and right arm.

Employer authorized referral to Dr. Chabot, an orthopedic surgeon, who performed a C3–C7 anterior cervical fusion on November 8. Claimant followed up with Dr. Chabot several times and, after outpatient physical therapy, returned to work in January 2005 with a 45–pound lifting restriction.

Claimant complained of dizziness and nausea at a follow-up with Dr. Chabot, who deemed these unrelated to Claimant's inju-

---

1. Unless otherwise stated or indicated by the context, our "accident" or "injury" references are to this accident and this injury.

ry or surgery. Claimant took Dr. Chabot's advice to see an ear, nose, and throat specialist, but he did not get better. By March 8, 2005, the dizziness made it impossible for Claimant to work.

Claimant was still complaining to Dr. Chabot in April 2005 about dizziness, nausea, and neck pain running down both of his shoulders and arms. Believing that Claimant's spine had satisfactorily healed and the fusion was intact, Dr. Chabot deemed Claimant at maximum medical improvement and released him from care with a 13% whole-body disability rating.

Claimant requested Employer to authorize further treatment for his dizziness, but was told to seek such care on his own. Claimant saw Dr. Park, a Cape Girardeau neurosurgeon who considered Claimant's complaints of post-surgery grinding and popping, reviewed a follow-up CT scan and myelogram, and concluded that the C6–C7 interface was not solidly fused. Dr. Park recommended fusion augmentation surgery and performed it on May 20, 2005.[2]

Claimant's neck pain and dizziness thereafter decreased but did not end. Dr. Park released Claimant from care in September 2005 with a permanent ten-pound lifting restriction. Claimant never returned to work because he suffered such dizziness, nausea, and numbness in his arms that he could not walk, sit, or sleep for extended periods of time.

Claimant's workers' compensation claim against Employer and the Second Injury Fund (SIF)[3] was heard in October 2009. The ALJ found that Dr. Park's augmentation surgery was medically necessary treatment for Claimant's injury; Claim-

ant's dizziness and nausea were medically related to his injury; and Claimant was permanently totally disabled (PTD) due to the 2004 accident. Claimant also was awarded expenses of $71,064.63 relating to Dr. Park's surgery and $16,420.54 for temporary total disability (TTD) from March 8 through September 15, 2005. The ALJ found no SIF liability.

Upon Employer's application for review, the Labor and Industrial Relations Commission (Commission) adopted and affirmed the ALJ's award in its entirety.

### General Principles of Review

■ Our scope of review is limited by § 287.495.1:

> Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: (1) That the commission acted without or in excess of its powers; (2) That the award was procured by fraud; (3) That the facts found by the commission do not support the award; (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

*See also Lacy v. Federal Mogul,* 278 S.W.3d 691, 699 (Mo.App.2009). We consider the whole record to determine whether sufficient competent and substantial evidence supports the award, and only

---

**2.** Dr. Park later testified that Claimant's dizziness "more likely than not" was due to his C6–C7 non-union, and that Claimant's work injury was the prevailing factor causing his need for augmentation surgery.

**3.** The SIF compensates injured employees if a current work-related injury combines with a prior disability to create an increased combined disability. *Stonecipher v. Poplar Bluff R1 School Dist.,* 205 S.W.3d 326, 327 (Mo. App.2006).

in the "rare" case do we find an award to be against the overwhelming weight of the evidence. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003);[4] *Lacy,* 278 S.W.3d at 699.

■ Here, we review the ALJ's findings and decision because they were adopted by the Commission, and we defer to the ALJ's credibility determinations, weighing of evidence, and decisions between competing medical theories. *Lacy, supra.* To choose between two conflicting medical theories "'is a determination particularly for the Commission'" because the weighing of "'expert testimony on matters relating to medical causation lies within the Commission's sole discretion and cannot be reviewed by this Court.'" *Id.* (quoting *Aldridge v. Southern Missouri Gas Co.,* 131 S.W.3d 876, 882 (Mo.App.2004)). We are bound, therefore, by the ALJ's decision as to which of the various medical experts to believe. *Id.*

## Analysis

Employer challenges the findings that Claimant's (1) dizziness and (2) need for Dr. Park's surgery were work related, that (3) Claimant was PTD from the accident in and of itself, and that Employer owes (4) $71,064.63 relating to Dr. Park's surgery and (5) six months of TTD.

*Point I—Work–Related Dizziness*

■ Employer takes issue with the finding that Claimant's dizziness was work related,[5] initially arguing that there was no such competent or substantial evidence.

We disagree. We previously noted Dr. Park's "more likely than not" opinion. A second expert, Dr. Musich, also attributed Claimant's vertigo to the accident and Dr. Chabot's surgery.

Employer asks us to dismiss such testimony as "speculative." This misses the distinction between *admissibility* of evidence and *submissibility* of a case. Adequacy of the factual or scientific foundation for expert opinion is an *admissibility* issue which is waived absent a timely objection or motion to strike. The opinions of Drs. Park and Musich, being admitted without objection, can be considered as any other evidence in determining *submissibility* of the case. *See Washington by Washington v. Barnes Hospital,* 897 S.W.2d 611, 616 (Mo. banc 1995); *Lee v. Hiler,* 141 S.W.3d 517, 524 (Mo.App.2004). Employer cannot back-door, under the guise of an insufficiency of evidence claim, a challenge to these doctors' opinions. *Lacy,* 278 S.W.3d at 700.

■ Employer also argues that this finding is against the overwhelming weight of the evidence. We acknowledge that Employer offered contrary expert testimony, but we defer to the Commission's choice between competing medical opinions. *See Kuykendall v. Gates Rubber Co.,* 207 S.W.3d 694, 706 (Mo.App.2006). The weighing of conflicting medical causation testimony lies within the Commission's sole discretion and cannot be reviewed by this court. *Aldridge,* 131 S.W.3d at 882. This is not the "rare" case where the award is contrary to the overwhelming weight of evidence. *Hampton,*

4. We cite several cases herein that were among many overruled by *Hampton* on an unrelated issue. *See* 121 S.W.3d at 224–32. Such cases do not otherwise conflict with *Hampton* and are cited for legal principles unaffected thereby; thus we will not further note *Hampton's* effect thereon.

5. Per then-applicable law, an injury was compensable if it was "clearly work related," *i.e.,* that "work was a substantial factor in the cause of the resulting medical condition or disability." *See* § 287.020.2, RSMo 2000.

121 S.W.3d at 223; *Lacy,* 278 S.W.3d at 699. Point I fails.

### Point II—Work–Related Surgery

■ Employer similarly claims there was no competent or substantial evidence of a work-related need for Dr. Park's surgery and that the overwhelming weight of evidence was otherwise. These claims share the same fate as Point I. Drs. Park and Musich testified without objection to the work-related need for Dr. Park's surgery. That Employer offered contrary evidence, including Dr. Chabot's testimony, did not render Claimant's evidence incompetent or inadmissible. It was for the Commission to weigh the competing medical opinions, which it did in Claimant's favor.[6] Point II also fails.[7]

### Point III—PTD Attributable to Accident

■ Employer claims the Commission erred in (1) finding Claimant permanently totally disabled, and (2) attributing it solely to the October 2004 accident.

■ "The test for permanent total disability is whether the employee is 'competent to compete in the open labor market,' i.e., unable to return to any 'reasonable or normal employment.'" *Higgins v. The Quaker Oats Co.,* 183 S.W.3d 264, 272 (Mo. App.2005) (quoting *Gordon v. Tri–State Motor Transit Co.,* 908 S.W.2d 849, 853 (Mo.App.1995)).

Although the ALJ observed that both vocational experts "opined that Claimant is unemployable in the open labor market," it is adequate for our purposes to cite only the testimony of Employer's expert:

Q. Okay. Am I—am I correct in understanding what you've told us today, that it's your opinion within a reasonable degree of vocational certainty that [Claimant] is presently unemployable in the open labor market as a result of the injuries he sustained in October of 2004 in combination with his preexisting disabilities?

A. If you're using the definition that you used before that takes in both aspects of employability and placeability, then I would say that, yes, he is unemployable based on a combination of factors that go beyond this—this injury.

Q. Okay. And for the reasons we've already discussed, there might be some jobs out there for [Claimant] with his skill set and his employment background, but you don't feel that he in his present state would be capable of performing any of those jobs—

A. I think—

Q.—is that a—

A. I think—

Q.—fair statement?

A. I think that he would have an extremely difficult time and would not be able to obtain a job offer at this time.

Q. And as a follow-up question, and, hopefully, this will be my last, it's your opinion that he would have a problem with failing to obtain said position as well as work an eight-hour day, forty-hour week in any of those positions that you said that he would possibly be employable in?

A. From the information provided to me, including his need to lie down and his level of activity, I don't believe that he would be able to obtain or sustain a job.

---

6. Indeed, the ALJ found Dr. Chabot "noncredible" in part, which it had the right to do. *Kelley v. Banta & Stude Const. Co.,* 1 S.W.3d 43, 48 (Mo.App.1999).

7. We find no merit in Employer's suggestion that the Commission improperly disregarded "the objective diagnostic studies."

Such testimony supports the PTD award, but does not attribute it solely to the accident. This proof, admitted without objection, came through Dr. Musich:

Q. Now, Doctor, do you have an opinion as to whether the injury that [Claimant] received to his cervical spine on October 13th, 2004 was in and of itself the substantial cause in—cause of [Claimant]'s present permanent and total disability?

A. Yes, that's—that is my opinion.

Q. So, it's your opinion that [Claimant]'s permanent and total disability was in and of itself caused by the injuries he sustained to his cervical spine on October 13th, 2004?

A. Yes.

Q. Doctor, was the injury that [Claimant] received to his cervical spine on October 13, 2004 in and of itself the prevailing factor in causing [Claimant]'s present permanent and total disability?

A. Yes, sir, that is my opinion.

The above-cited testimony supports a PTD finding wholly attributable to the accident, and we are not persuaded by Employer's fall-back claim that the Commission violated § 287.190.6(1).[8] We deny Point III.

### Point IV—Past Medical Expense

■ Employer challenges both the fact and amount of the $71,064.63 past medical expense award relating to Dr. Park's surgery and treatment.

First, Employer denies any such liability, urging that only if an employer fails to provide necessary care can an employee arrange it on his own and recover the cost. *See, e.g., Poole v. City of St. Louis,* 328 S.W.3d 277, 291 (Mo.App.2010)(employer liable for employee-procured treatment only if employer refused or ignored request for treatment or otherwise had notice of need).

Here, the ALJ found that "Claimant credibly testified that he requested additional care after his release from Dr. Chabot; however, the employer told him he was 'on his own' in this regard. There was no testimony contradicting Claimant on this issue." Because we defer to this finding, we cannot say that it was error to charge such expenses to Employer. *See Banks v. Springfield Park Care Center,* 981 S.W.2d 161, 164–65 (Mo.App.1998).

Employer's complaint about the amount of such expenses takes issue with these ALJ findings:

Drs. Park and Musich both credibly testified that the $71,064.63 in charges were reasonable for the procedure performed. Employer suggests that it should get a credit for those amounts paid by health insurance or written off pursuant to the providers' agreement with the health insurer. Employer put on no evidence that Employee may not eventually be responsible for satisfaction of these charges. In order to receive a credit for write-offs, Employer must establish by a preponderance of the evidence that Claimant is not legally subject to further liability. Employer did not carry its burden in this regard.

---

8. Under this statute, prior disability determinations are "conclusively presumed to continue undiminished whenever a subsequent injury *to the same member or same part of the body* also results in *permanent partial disability* for which compensation under this chapter may be due." [Our emphasis.] Employer has not shown either of the italicized conditions. The Commission, moreover, found that prior to the 2004 accident, "Claimant was working in a heavy labor position without any medical restrictions. He credibly testified that his prior injuries were not a hindrance to his employment or performing his duties. His employer did not make any special accommodations for him."

*Farmer–Cummings v. Personnel Pool of Plate [sic] County,* 110 S.W.3d 818, 823 (Mo.2003).

The burden-shifting analysis applied by the ALJ was proper. Claimant had to, and did, offer into evidence the medical bills documenting his claim. For Employer to seek a reduction for write-downs, write-offs, or adjustments, it had to show that Claimant had no reimbursement obligation or other liability to pay such sums. *See Farmer–Cummings,* 110 S.W.3d at 822–23; *Treasurer of Missouri v. Huddins,* 308 S.W.3d 789, 792 (Mo.App.2010); *Ellis v. Missouri State Treasurer,* 302 S.W.3d 217, 225 (Mo.App.2009).

Review of the record reveals no basis to reverse the ALJ's finding that Employer failed to carry this burden.[9] As the party claiming a credit, Employer carried the burden of proving it. *Ellis,* 302 S.W.3d at 224. Point denied.

### Point V—TTD

Finally, Employer challenges the March 8–September 15, 2005 TTD award. Our Point I analysis disposes of the initial assertion that the overwhelming weight of evidence disproves that Claimant's dizziness and nausea were injury related.

Next, Employer argues that Claimant had reached maximum medical improvement for his injury when Dr. Chabot released him on April 25, 2005. We will not describe again the contrary evidence, which the ALJ credited, that Dr. Park's subsequent treatment was medically necessary and accident related.

Finally, we affirm the Commission's finding of no SIF liability. If the 2004 injury alone caused permanent total disability, as the Commission found, any preexisting disability is irrelevant and the SIF is not liable. *Kerns v. Midwest Conveyor,* 126 S.W.3d 445, 455 (Mo.App.2004). We deny Point V and affirm the award.

BATES and FRANCIS, JJ., concur.

9. ERISA reimbursement rights of employer-provided health plans, for example, can be major considerations. *See Ellis,* 302 S.W.3d at 223–24. As established at oral argument, Employer would have known and could have shown whether its health plan claimed such rights, but it declined to broach this issue at the hearing.