ARTHUR ANTTILA, )
 )
 Appellant, )
 )
 vs. ) Nos. SD36826
 ) Filed: September 17, 2021
TREASURER OF THE STATE OF MISSOURI, )
CUSTODIAN OF SECOND INJURY FUND, )
 )
 Respondent. )

 APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

AFFIRMED

 Arthur Anttila (“Anttila”) appeals the “Final Award Denying Compensation” (the

“Award”) by the Labor and Industrial Relations Commission (the “Commission”) on his worker’s

compensation claim for benefits against the Treasurer of the State of Missouri as Custodian of the

Second Injury Fund (the “Fund”). Anttila challenges the Award of the Commission in two points

relied on. Finding no merit in either of his points, we deny the same and affirm the Award of the

Commission.
 Facts and Procedural History

 Anttila worked as an over-the-road truck driver for Dyno Nobel, Inc. (“Employer”),

beginning on January 3, 2011.

 In 1994, Anttila suffered on-the-job injuries to his left shoulder and left leg while working

for Freymiller in Illinois. Anttila made a full recovery from these injuries. After he recovered

from his injuries, Anttila did not miss any work due to his injuries, and the injuries did not cause

him to work slower or take extra breaks.

 While living in Illinois and working for Jevic Transportation, Anttila underwent

chiropractic treatment in 2009 and 2010, for “maintenance. Just to get aligned.”

 In October 2011, Anttila began seeing Dr. David Mullin (“Dr. Mullin”), a chiropractor,

with complaints of pain in his neck, thoracic spine, and left upper extremity. He continued to see

Dr. Mullin for those complaints throughout 2011 and 2012. On July 25, 2013, Anttila saw Dr.

Mullin for pain in his neck, upper back, shoulders, lower back, buttock and side. On September

2, 2013, Dr. Mullin reported that Anttila was complaining of pain in the same parts of the body

and that “we are trying to keep him driving[.]” In December 2013, Dr. Mullin made a similar

notation that, “We are trying to keep him driving too long on the road, treatments not close enough

together[.]”

 On Friday, January 3, 2014, Anttila drove from Carthage to Kansas City to “switch[] out

trailers.” Upon arrival in Kansas City, he attempted to remove a pin from the fifth-wheel trailer,

when he felt a “crunch in his neck.” He continued to work, but on the drive back to Carthage he

began experiencing severe pain in his left arm and neck. Upon arriving back in Carthage, he was

unable to report the injury to Employer because the “yard was closed[.]”

 2
 On January 4, 2014, Anttila sought treatment for his injury from Dr. Mullin, who sent him

to the emergency room, where he had x-rays. Anttila was also referred to his primary care doctor

for referral to an orthopedic surgeon. Anttila then notified Employer of his injury.

 On January 6, 2014, Employer sent Anttila to Dr. Charles Mauldin (“Dr. Mauldin”). After

examining Anttila, Dr. Mauldin ordered physical therapy. On January 15, 2014, Dr. Mauldin

ordered an MRI, which showed the previous surgical repairs to Anttila’s left shoulder, without

evidence of any recurrent tears. Dr. Mauldin determined Anttila’s injury was related to a pre-

existing shoulder condition and released him from authorized care.

 Anttila treated on his own thereafter, undergoing a cervical fusion on June 12, 2014, to

address a C5-6 disc herniation with severe nerve root impingement. He also underwent left carpal

tunnel surgery at that time. After surgery, Anttila’s left arm pain was relieved, but his neck

continued to bother him. While undergoing physical therapy, Anttila indicated some left arm pain,

weakness, and coldness. Anttila received an injection to his left shoulder on September 13, 2014,

and a cervical injection on October 28, 2014. He was released from neck treatment as of June 16,

2015. Anttila did not return to work after the January 3, 2014 accident.

 In August 2015, Anttila filed a “Claim for Compensation” (the “Claim”) identifying the

parts of the body injured as “Left shoulder/arm/hand and cervical spine.” He specifically identified

the mechanism of injury as “pulling a pin from a 5th wheel when he experienced pain and

discomfort” in the named areas. The Claim included a claim against the Fund, identifying the

1994 pre-existing injuries to the left leg and shoulder.

 On January 28, 2015, Anttila was examined by Dr. Michael Chabot (“Dr. Chabot”), at

Employer’s request. Dr. Chabot reviewed records of diagnostic testing, and prepared reports dated

August 5, 2015 and October 28, 2015. Dr. Chabot opined that Anttila’s acute cervical spine injury

 3
was work-related and rated the disability at 15% to the body as a whole due to the January 2014

injury and subsequent surgery. Dr. Chabot identified 5% of that rating as attributable to pre-

existing disease at the C4-5 level. Dr. Chabot opined that Anttila was able to “return to

full/unrestricted duties[,] noting that he no longer complained of any significant left neck or left

upper extremity complaints.”

 Anttila sought his own independent medical examination from Dr. Robert Paul (“Dr. Paul”)

on January 27, 2016. Dr. Paul identified two separate injuries: “cumulative trauma to cervical

spine,” and “traumatic carpal syndrome requiring surgery.” Dr. Paul opined that Anttila “sustained

a 50% disability to the body as a whole as a result of all conditions relative to his employment at

[Employer], with “15% . . . apportioned [to] his exposure to the hazards of an occupational

illness/disease in the form of cumulative trauma to his cervical spine due to the constant jarring of

his neck while driving over the last three years or more for [Employer],” and “35% for his two-

level fusion at C5-6, C6-7, with residuals.” In addition, Dr. Paul opined Anttila had “sustained a

20% disability at the 175-week level for left traumatic carpal tunnel syndrome requiring surgery

that was due to his on the job injury of 1-3-14.” Dr. Paul found no disability for Anttila’s pre-

existing conditions to his left shoulder or left leg. Although Dr. Paul listed other medical

conditions evident in the records, he did not find any of them disabling. Dr. Paul concluded that

Anttila was permanently and totally disabled due to the combined effects of disabilities from the

January 3, 2014 injury “with prior disabilities.” Dr. Paul’s opinion was premised on identifying

cumulative trauma to Anttila’s cervical spine as the prior disability.

 Both Dr. Paul and Dr. Chabot found evidence of a pre-existing condition in Anttila’s neck.

Dr. Paul found this to have resulted from Anttila’s work as a truck driver experiencing repetitive

jarring and specifically related it to the last three years of work with Employer, based on Anttila’s

 4
report of the road conditions traveled during that employment. Dr. Chabot attributed any pre-

existing disability to degenerative processes. Both doctors also identified some mild degenerative

changes at C3-4, evidence of stenosis, and other factors in the neck.

 Anttila amended his Claim (the “Amended Claim”) in May 2016, including in the

description of his injury that he was “Additionally . . . exposed to significant vibrations in the

on-the-job operation of the vehicle, resulting in injury to his cervical spine.” The claim against

the Fund remained the same.

 At Anttila’s request, he was evaluated by vocational expert Philip Eldred (“Eldred”) in

June 2016. Eldred opined that Anttila was permanently and totally disabled as “a result of his

injury on January 3, 2014 in isolation.” Eldred did not identify any pre-existing conditions in the

medical records that were a cause of functional limitations nor did Anttila report that any prior

condition affected his ability to perform his work.

 A hearing was held on October 4, 2018. At the hearing, the parties stipulated, in pertinent

part, that on January 3, 2014, Anttila sustained an accident which arose out of and in the course

and scope of his employment with Employer; and Anttila also sustained an occupational disease

which arose out of and in the course and scope of his employment with Employer. The Fund

disputed that Anttila’s injury was compensable until after the last injury.

 Anttila testified that after he recovered from his left shoulder surgeries in 1994, he required

no further treatment to the shoulder, did not miss any work, and did not work slower or take extra

breaks due to the shoulder. After beginning his employment with Employer, he began

experiencing ongoing neck and arm pain. Anttila blamed this on some of the roads he traveled

that were unpaved, had ruts, and sometimes were ice and snow covered, which caused vibration.

 5
Anttila asserted the trucks were often old and needed new shocks, that he bounced around while

driving, and the roads were hard on his body.

 Anttila stated he began treating with Dr. Mullin in October 2011 for left arm and right leg

numbness and neck adjustment. Anttila indicated that this was “maintenance,” “to get

realigned[,]” “[i]t helped me perform better[,]” and that he had no problems doing his job prior to

January 3, 2014. He did not miss any work for chiropractic appointments or pain. Anttila denied

having to work slower, take extra breaks, or needing accommodation in any fashion by Employer

prior to his January 3, 2014 injury. He denied these conditions limited his ability to perform his

work.

 Anttila stated he still experienced neck pain and had limitations on movement. He

continued to have difficulty standing for long periods, had limited lifting ability, weakness in his

left arm causing problems with gripping, had difficulty sleeping, and required assistance with

certain activities.1

 At the conclusion of the hearing, the Employer and its insurer settled with Anttila by

“Stipulation for Compromise Settlement,” which was approved by the ALJ on December 10, 2018.

The sole issue remaining for the ALJ to address in her final award was whether, and to what extent,

the Fund was liable.

 On February 7, 2019, the ALJ entered a “Final Award.” The ALJ found that Anttila

sustained two distinct injuries in the course of employment with Employer. The first being a

traumatic accident on January 3, 2014, while pulling a trailer pin that resulted in cervical injury

and left carpal tunnel syndrome. The second being an occupational injury due to exposure to

jarring, with the last date of occupational exposure on January 3, 2014, after Anttila returned to

1
 In 2016, Anttilla underwent carotid artery surgery, and a “leg artery surgery” on his legs

 6
Carthage, as he continued to be exposed to jarring on the drive home, but that this injury did not

render Anttila permanently and totally disabled when considered alone.

 The ALJ found Anttila sustained 15% permanent partial disability to the cervical spine for

his last occupational injury, resulting from repetitive truck jarring and vibrations[;] 35% permanent

partial disability to the body as a whole for Anttila’s traumatic cervical spine injury; and 20%

permanent partial disability at the 175-week level for the resulting left carpal tunnel syndrome.

 The ALJ found Dr. Paul’s testimony credible as to Anttila being permanently and totally

disabled, but only as a result of a combination of the January 3, 2014 accident and prior cumulative

trauma to the cervical spine. The ALJ also found vocational expert Eldred’s testimony credible

that if Anttila’s occupational injury due to vibrations was considered a separate injury from the

January 3, 2014 accident, he would be permanently and totally disabled due to the combination of

those injuries.

 The ALJ found Anttila’s testimony “extremely” credible as to his limitations due to the

work injury and occupational exposure, which were supported by the medical records.

 The ALJ concluded that Anttila was permanently and totally disabled as a result of a

combination of the occupational exposure injury of January 3, 2014; the pre-existing traumatic

accident, which occurred earlier that day; and that as of June 17, 2015, the Fund was liable to pay

for permanent total disability benefits of a weekly differential of $404.62 for a period of 235 weeks,

and thereafter, the full amount of permanent total disability at $851.47 per week, for Anttila’s

lifetime.

 7
 The Fund filed a timely “Application for Review” with the Commission alleging that the

ALJ erred in: (1) applying the incorrect law relative to Fund liability; (2) finding two separate

claims represented by a single claim; (3) finding Anttila sustained a separate occupational disease

“subsequent to the traumatic accident” on January 3, 2014; (4) finding Anttila’s single claim

established both a pre-existing injury and last injury to establish Fund liability; and (5) finding

there was a pre-existing qualifying disability which combined with the primary injury for Fund

liability.

 On August 4, 2020, the Commission denied Anttila’s claim against the Fund because

Anttila failed to demonstrate a pre-existing condition that, combined with the primary injury, met

the requirements of section 287.220.3.2

 Specifically, the Commission found that:

 [Anttila] suffered an injury by accident on January 3, 2014, which resulted in
 disability to his neck and left extremity as carpal tunnel syndrome. This was the
 primary injury. We adopt the permanent partial disability rating of Dr. Paul with
 regard to the primary injury as 35 % to his cervical fusion with residuals and 20 %
 at the 175 week level to his left traumatic carpal tunnel syndrome. We find
 preexisting disease in the cervical spine and adopt the disability rating of Dr.
 Chabot of 5 % of the body as a whole referable to preexisting disease at C4-5.

 ....

 The preexisting disability did not meet the threshold requirement of a minimum of
 fifty weeks of permanent partial disability.

This appeal followed.

2
 All statutory references are to RSMo Cum.Supp. (2013) unless otherwise indicated. All rule references are to
Missouri Court Rules (2013).

 8
 In two points relied on,3 Anttila argues:

 I. The Commission erred in reversing the ALJ’s finding of two separate claims
 in that ability to amend workers’ compensation claims is well-established
 legal precedent, is at the discretion of the ALJ, is not prohibited by the strict
 construction of R.S.Mo §287, and the [Division of Workers’ Compensation
 (“DWC”)] erred by not assisting Anttila in the filing of his claim as required
 by R.S.Mo §287.400.

 II. The Commission erred in finding Anttila was not permanently and totally
 disabled in that substantial and competent evidence establishes that the last
 injury was in fact Anttila’s occupational exposure/repetitive trauma, that his
 preexisting compensable traumatic injury and disability met the threshold
 for Fund liability under R.S.Mo §287.220.3(2)(a)(ii), and that Anttila was
 permanently and totally disabled as a combination of the two injuries.

 Standard of Review

 This Court reviews all final decisions, findings, rules, and orders of the Commission
 to determine whether the same are supported by competent and substantial evidence
 upon the whole record. The Commission’s decision will be affirmed unless: (1) the
 Commission acted without or in excess of its powers; (2) the award was procured
 by fraud; (3) the facts found by the Commission do not support the award; or (4)
 there was not sufficient competent evidence in the record to warrant the making of
 the award. Upon appeal no additional evidence shall be heard and, in the absence
 of fraud, the findings of fact made by the Commission within its powers shall be
 conclusive and binding. In addition to findings of fact, this Court also defers to the
 Commission’s determinations as to credibility of witnesses and the weight given to
 conflicting evidence.

3
 We necessarily observe that neither of Anttila’s points relied on follow the mandatory “erred in/because/in that”
formula contemplated by Rule 84.04(d):

 (2) Where the appellate court reviews the decision of an administrative agency, rather than
 a trial court, each point shall:
 (A) Identify the administrative ruling or action the appellant challenges;
 (B) State concisely the legal reasons for the appellant’s claim of reversible error; and
 (C) Explain in summary fashion why, in the context of the case, those legal reasons support
 the claim of reversible error.
 The point shall be in substantially in the following form: “The [name of agency] erred in [identify
 the challenged ruling or action], because [state the legal reasons for the claim of reversible error,
 including the reference to the applicable statute authorizing review], in that [explain why, in the
 context of the case, the legal reasons support the claim of reversible error].

Rule 84.04(d)(2) (italics in original, bolding added). However, as our preference is to resolve issues on the merits,
ex gratia we curatively address the primary thrusts contained in Anttila’s Points I and II arguments.

 9
Annayeva v. SAB of the TSD of the City of St. Louis, 597 S.W.3d 196, 198 (Mo. banc 2020)

(internal quotations and citations omitted). Reversal under section 287.495.1 “is warranted only

in rare cases.” Schlereth v. Aramark Uniform Services, Inc., 589 S.W.3d 645, 651 (Mo.App.

E.D. 2019) (internal quotation and citation omitted). “This Court reviews the Commission’s

findings to determine if they are supported by competent and substantial evidence upon the whole

record, but questions of statutory interpretation are questions of law reviewed de novo.” Treasurer

of the State of Missouri v. Parker, 622 S.W.3d 178, 180–81 (Mo. banc 2021) (internal quotation

and citation omitted).

 Analysis

 Point I: Amended Claim

 In his first point relied on, Anttila argues that the Commission “erred” in reversing the

ALJ’s finding of two separate claims in that the ability to amend workers’ compensation claims is

well-established legal precedent, is at the discretion of the ALJ, is not prohibited by the strict

construction of section 287, and the DWC erred in not assisting Anttila in filing his claim under

section 287.400.

 As Anttila conceded at oral argument, the parties stipulated as to occupational disease and

the traumatic injury, and “there was no error in doing so.” As Anttila also conceded, he did not

ask for help from the DWC, and that it was not the case that the DWC refused to provide him with

requested assistance.4 The premise underlying Anttila’s point and argument—i.e., that the

Commission rejected Anttila’s attempt to amend his claim—is unfounded. Rather, as Anttila

further conceded, the Commission allowed Anttila’s Amended Claim, and after a fully contested

4
 See section 287.400 (“In the event a dispute arises between the employer and the employee regarding the payment
of compensation, the division shall assist the employee in filing a claim and securing an early adjudication thereof.”).
Anttila does not demonstrate an unfulfilled duty (or reversible error) in light of this section.

 10
hearing, Anttila simply lost on the merits. Anttila fails to demonstrate reversible error in his Point

I, and the same is accordingly denied.

 Point II: Permanent and Total Disability

 In his second point, Anttila argues that the Commission “erred” in finding that “Anttila was

not permanently and totally disabled,” because “substantial and competent evidence established”

the opposite conclusion.

 Anttila suggests that “[t]he Commission is not free to disregard the testimony of a qualified

medical expert as medical causation of an injury in the absence of competent countervailing

evidence or impeachment.” He posits that Dr. Chabot’s testimony was not competent and

substantial evidence “to impeach the opinions of Dr. Paul” because Dr. Chabot “fail[ed] to both

review relevant medical records and evaluate the repetitive trauma claim[.]” Anttila did not object

to the admission of Dr. Chabot’s testimony for lack of foundation, or lodge a motion to strike the

testimony as unsupported. “Therefore, the adequacy of the factual basis of [Dr. Chabot’s] opinion

was waived[.]” Butterball, LLC v. Dobrauc, 599 S.W.3d 495, 503 (Mo.App. S.D. 2020).5

 Anttila also argues that “Dr. Chabot offered no opinion on the source of the preexisting

5% PPD.” (Emphasis in original). The record reflects the following conclusions from Dr. Chabot,

as relevant here:

5
 This is not the first time we have “rejected this manner of unmade evidentiary objection, shoe-horned into an
evidentiary sufficiency claim.” Butterball, 599 S.W.3d at 502 (internal quotation and citation omitted). See Nichols
v. Belleview R-III School District, 528 S.W.3d 918, 930 (Mo.App. S.D. 2017); Proffer v. Federal Mogul Corp., 341
S.W.3d 184, 187 (Mo.App. S.D. 2011):
 Employer asks us to dismiss such testimony as ‘speculative.’ This misses the distinction between
 admissibility of evidence and submissibility of a case. Adequacy of the factual or scientific
 foundation for expert opinion is an admissibility issue which is waived absent a timely objection or
 motion to strike. The opinions of Drs. Park and Musich, being admitted without objection, can be
 considered as any other evidence in determining submissibility of the case. Employer cannot back-
 door, under the guise of an insufficiency of evidence claim, a challenge to these doctors’ opinions.
(Emphasis in original).

 11
 It is my opinion that [Anttila] has sustained a PPD of 15% of the body as a whole
 as it relates to his injury and subsequent surgery. It is my opinion that 5% of that
 rating is related to pre-existing disease at the C4-5 level. It is my opinion that
 the disc herniation at C5-6 was acutely associated with his work injury of January
 3, 2014.

(Emphasis added).

 Anttila does not suggest that there was no other medical testimony that designated the

origin of the pre-existing PPD, or why such designation was necessary to sustain the Commission’s

decision. A decision against a claimant, as the party with the burden of proof, does not require

any evidence to support it. Annayeva, 597 S.W.3d at 200 n.8 (“Only factual findings that are

necessary to make an award for the employee must be supported by competent and substantial

evidence on the whole record.”).

 It is the province of the Commission to believe or disbelieve witnesses, as Anttila conceded

at oral argument. This was a battle of experts. Anttila simply failed in his burden of persuasion

“actually to convince the [Commission] to view the facts in a way that favors [him].” Annayeva,

597 S.W.3d at 200 n.8 (internal quotation and citation omitted). Anttila’s Point II is accordingly

denied.

 The Award of the Commission is affirmed.

WILLIAM W. FRANCIS, JR., P.J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. - CONCURS

JACK A.L. GOODMAN, J. - CONCURS

 12